IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

INTEGRAL DEVELOPMENT CORP.,

    Plaintiff,

v.

VIRAL TOLAT,

    Defendant.

No. C 12-06575 JSW

**ORDER RE MOTIONS TO DISMISS**

Now before the Court is the motion to dismiss several claims in the First Amended Complaint filed by Defendant Viral Tolat ("Tolat"). Also before the Court is the motion to dismiss the counterclaims filed by Plaintiff Integral Development Corp ("Integral"). Having considered the parties' papers, relevant legal authority, and the record in this case, the Court GRANTS IN PART and DENIES IN PART Tolat's motion to dismiss and DENIES Plaintiff's motion to dismiss the counterclaims.

## BACKGROUND

In its First Amended Complaint, Integral, a software development company, alleges that its former employee, Tolat, violated federal and state securities laws, misappropriated trade secrets, breached his fiduciary duties and duty of loyalty, interfered with prospective economic advantage, and committed various kinds of computer fraud when he left his former employment to negotiate employment and work for a competing company, EBS Dealing Resources ("EBS").

Upon his motion, Tolat moves to dismiss a number of claims in the First Amended Complaint, specifically, Integral's claims for violations of federal and state securities laws

1   (claims 1 and 7), for breach of the duty of loyalty (claim 5), for violations of federal and state
2   anti-hacking laws (claims 9 and 10), and for injunctive relief (claim 8).

Upon its motion, Integral moves to dismiss Tolat's counterclaims for conversion, breach of contract, and intentional interference with contractual relations.

The Court shall address additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.    Applicable Legal Standards.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of

2

the elements of a cause of action will not do." *Twombly*, 550 U.S. at 544. If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**B.     Defendant's Motion to Dismiss Claims in First Amended Complaint.**

  **1.     Federal Securities – Claim 1.**

In order to state a claim for violation of Section 10(b) of the Securities Act of 1934 and Rule 10b-5, a plaintiff must allege facts sufficient to establish: (1) that the defendant made a material misrepresentation or omission of fact; (2) that the misrepresentation was made with scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) loss causation; and (6) economic loss. *See, e.g., Dura Pharmaceutical, Inc. v. Broudo*, 544 U.S. 336, 341 (2005). Failure to plead any of these elements requires dismissal of the claim. *Applestein v. Medivation, Inc.,* 861 F. Supp. 2d 1030, 1040 (N.D. Cal. 2012).

Tolat argues that Integral cannot state a claim for federal securities violations both because Integral lacks standing to bring such a claim and also because Integral has failed to allege that it has suffered any economic loss causally connected to Tolat's alleged conduct. The basic premise of Integral's securities claims is that Tolat failed to disclose to his former employer that the price set forth in its competitor's, EBS's, Stock Purchase Agreement, tendered to Integral pursuant to its right of first refusal, was artificially inflated and fraudulent, thereby causing Integral not to be able to exercise its right of first refusal. Tolat argues that because no actual contract to purchase securities was formed and no actual purchase of securities was ever consummated, Integral lacks standing to state a claim for federal securities violations. *See, e.g., Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731-32 (1975) (holding that standing under Rule 10b-5 in limited to purchasers and sellers of securities).

However, the definition of a security under federal law also includes a contract to sell or to purchase a security, and Integral properly alleges that it exercised such a contract as to Tolat's stock. *See id*. at 732 (holding that a "contract to purchase or sell securities is expressly

3

1 defined by § 3(a) of the 1934 Act, 15 U.S.C. § 78c(a), as a purchase or sale of securities for the
2 purposes of the Act.")

3 Tolat argues that Integral's right of first refusal does not qualify as a contract to
4 purchase or sell securities because their offer to him was so markedly different from EBS's
5 offer that it constituted a counteroffer. However, under California law, the Court must take a
6 common sense approach to review the circumstances and "commercial realities" of the right of
7 first refusal in order to determine whether its terms are materially equivalent to the third-party
8 contract in order to qualify as a contract for sale. *See Arden Group, Inc. v. Burk*, 45 Cal. App.
9 4th 1409, 1414-15 (1996). At this procedural posture, the Court finds that the First Amended
10 Complaint pleads sufficient facts to determine that Integral's alleged exercise of its right of first
11 refusal is sufficiently similar to the EBS Stock Purchase Agreement for the purpose of
12 qualifying as an underlying contract to sell or purchase securities. The allegations are therefore
13 sufficient to establish standing to state a claim for violation of federal securities law. *See Blue
14 Chip*, 421 U.S. at 750-51 (holding that plaintiffs who have contractual rights or duties to
15 contract to purchase or sell securities may have standing to maintain an action under the 1934
16 Act).

17 Tolat also contends that Integral fails to state a claim for federal securities violations
18 because Integral cannot properly plead damages. To meet its burden, Integral must allege
19 sufficient evidence to show a "causal connection" exists between the alleged misrepresentation
20 and an actual "economic loss." *Dura Pharmaceuticals*, 544 U.S. at 342. Tolat argues that
21 because Integral never actually purchased his shares, it cannot allege that it was damaged by the
22 purchase or sale of securities. However, at the motion to dismiss stage, a plaintiff need merely
23 plead facts indicating that the alleged securities fraud caused economic loss. *See id.* at 338,
24 346-47. Integral makes the plausible allegation that it suffered economic loss as a result of
25 Tolat's conduct. (FAC at ¶¶ 33-37.) At this procedural posture, the Court does not sit as a trier
26 of fact but merely must determine whether "plaintiff alleges facts to support a theory that is not
27 facially implausible." *In re Gilead Scientists Securities Litigation*, 536 F.3d 1049, 1057 (9th
28 Cir. 2008).

4

Accordingly, the Court DENIES Tolat's motion to dismiss the federal securities cause of action (claim number one).

### 2. California Securities – Claim 7.

In contrast, under California securities law, Sections 24519 and 25501 of the Corporations Code, "liability [is] limited to actual sellers." *In re Diasonics Securities Litigation*, 599 F. Supp. 447, 459 (N.D. Cal. 1984). California law does not provide standing for a plaintiff who is neither a purchaser nor a seller of securities. No private right of action under the California Corporations Code exists as a result of any misrepresentation or omission unless there has been a completed sale of a security. *See MTC Elec. Techs. Co. v. Leung*, 876 F. Supp. 1143, 1147 (C.D. Cal. 1995) ("In order to have a valid cause of action under California Corporations Code § 25401, [plaintiff] must allege that there was a sale or purchase of stock in California . . . ."). Because Integral does not, and cannot, allege there was an actual completed sale or purchase of securities, Integral has failed to allege that it has standing to sue under California securities laws.

Accordingly, the Court GRANTS Tolat's motion to dismiss the California state securities cause of action (claim number seven).

### 3. Duty of Loyalty – Claim 5.

Tolat moves to dismiss Integral's fifth claim for relief for breach of the duty of loyalty on the basis that it is duplicative of Integral's fourth claim for relief for breach of fiduciary duty and because Tolat claims there is no independent cause of action for breach of the duty of loyalty under California law. (Motion at 10, citing *Mattel, Inc. v. MGA Entertainment, Inc.*, 2011 WL 8427611, at *3 (C.D. Cal. March 28, 2011).)

However, California law recognizes that an employer may bring an independent claim against an employee with managerial duties for breach of the duty of loyalty. *See, e.g., Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 295-96 (1995); *see also Fowler v. Varian Associates, Inc.*, 196 Cal. App. 3d 34, 41 (1987). The elements for breach of the duty of loyalty are "virtually identical to those for breach of fiduciary duty" and are: "(1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3)

1  damage proximately caused by that breach." *Fields v. QSP, Inc.,* 2011 WL 1375286, at *3
2  (C.D. Cal. April 8, 2011). "Although they are similar, breach of fiduciary duty and breach of the
3  duty of loyalty are two distinct claims under California law." *Id.* at *3 n.3.

4  Accordingly, the Court DENIES Tolat's motion to dismiss the cause of action for breach
5  of the duty of loyalty (claim number five).

### 4. Anti-Hacking Laws – Claims 9 and 10.

Integral alleges two causes of action for violation of the Computer and Fraud Abuse Act ("CFAA"), 18 U.S. C. § 1030, and the Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502. These anti-hacking statutes prohibit the unauthorized use of any computer system for improper or illegitimate purpose. The CFAA prevents criminal hacking and is designed to punish "the circumvention of technological access barriers – not misappropriation of trade secrets." *United States v. Nosal*, 676 F.3d 854, 857 (9th Cir. 2012). The Ninth Circuit has rejected the contention that the terms "exceeds authorized access" within the meaning of the CFAA applies where someone has access to a computer's information but is limited in permissible use of that information. *Id.* The plain language of the CFAA "target[s] the unauthorized procurement or alteration of information, not its misuse or misappropriation." *Id.* at 863.

Integral does not and cannot allege that Tolat gained improper or unauthorized access to Integral's computers for illegitimate purpose. Rather, Integral alleges that Tolat "copied, downloaded and removed numerous Integral source code files . . . when he clearly had no legitimate reason to do so." (FAC at ¶ 52.) Integral does not allege that Tolat used improper methods to gain access to the source code, but rather concedes, as it must, that at the time of the alleged acquisition of the materials, Tolat was working for Integral and had access to virtually all of Integral's trade secret information and confidential and proprietary intellectual property. (*Id.* at ¶¶ 3, 16.)

Accordingly, the Court GRANTS Tolat's motion to dismiss the cause of action for violation of anti-hacking laws (claims 9 and 10).

6

### 5. **Declaratory Relief – Claim 8.**

Lastly, Tolat moves to dismiss Integral's claim for declaratory relief under Federal Rules of Civil Procedure 57 and the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, 2202. The DJA provides in pertinent part that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. 2201. The purpose of a declaratory judgment is to "declare future rights of a party and not to remedy past harms." *Rebel Communications, LLC v. Virgin Valley Water District,* 2013 WL 4520855, at *1 (D. Nev. Aug. 26, 2013). The purpose of a declaratory judgment is to set forth a declaration of future rights. *Societe de Conditionnement en Aluminum v. Hunter Engineering Co.*, 655 F.2d 938, 943 (9th Cir. 1981); *see also Edejer v. DHI Mortgage Co.*, 2009 WL 1684714, at *31 (N.D. Cal. June 12, 2009) ("The purpose of a declaratory judgment is to set controversies at rest before they cause harm to the plaintiff, not to remedy harms that have already occurred.")

Declaratory judgment is appropriate when the parties seek to resolve "an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not done so." *Williams v. Bank of America*, 2013 WL 1907529, at *5 (E.D. Cal. May 7, 2013) (citing *Seattle Audubon Soc. v. Moseley,* 80 F.3d 1401, 1405 (9th Cir. 1996)). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. State of Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).

Here, Integral's eighth claim for relief does not seek an order declaring the rights and legal relations of the parties, but rather seeks discovery and injunctive remedies that are both duplicative of the relief it seeks for its other substantive causes of action and seeks to remedy past harms. The Court finds the eighth cause of action for declaratory relief is not supportable as a separate and independent cause of action. Accordingly, the Court GRANTS Tolat's motion to dismiss the cause of action for declaratory and injunctive relief (claim 8).

**C.  Integral's Motion to Dismiss the Counterclaims.**

**1.  Tort Claims.**

Integral moves to dismiss Tolat's counterclaims sounding in tort (the first and third counterclaims for conversion and intentional interference with contractual relations) on the basis that the allegations sound in contract. Under California law, conduct amounting to a breach of contract may only become grounds for a claim in tort if such conduct violates independent duties arising under principles of tort law. *See Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999). Any potential remedies for breach of contract are restricted only to contract damages. *See Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 105-06 (1995).

In his counterclaims, however, Tolat alleges that Integral engaged in wrongful conduct beyond the breach of their agreement. Tolat alleges that Integral did not exercise its right of first refusal, but instead and working outside of the bounds of the contract, took away his shares of stock, paid him nothing, and prevented him from completing his sale of stock to EBS. At this procedural posture and assuming the allegations are true as it must, the Court finds that Tolat has asserted more than merely breaching the contract terms, but rather has alleged wrongful actions of self-help stock cancellation. (*See* Counterclaims ¶ 46-47.) Because the tort claims are premised upon conduct alleged to have been performed outside the basic terms of the parties' agreement, the Court finds Integral's contention that the claims merely sound in contract to be unpersuasive.

**2.  Claim for Intentional Interference with Contractual Relations.**

Integral moves to dismiss Tolat's counterclaim for intentional interference with contractual relations on the basis that the claim is facially illogical. To state a cause of action for intentional interference with contractual relations, "a plaintiff must show: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff, which is proximately caused by the acts of

8

the defendant." *Alpha Investment, LLC v. Zynga, Inc.* 2012 WL 2135291, at *6 (N.D. Cal. June 12, 2012) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)).

Integral argues that it "did nothing illegal at all and acted entirely within its rights to exercise its [right of first refusal]." (Motion at 11.) On this premise, Integral contends that a right of first refusal holder cannot be held liable for interfering with a third-party contract. (*See id.* (citing *Crivelli v. General Motors Corp.*, 215 F.3d 386, 395 (3d Cir. 2000) ("While [defendant's] exercise of its contractual right of first refusal necessarily interfered with the purchase agreement between [plaintiff] and [the third-party], it does not subject [defendant] to liability for interfering with their contract.")).

Here, however, Tolat alleges that Integral did not exercise its right of first refusal, but rather, acting outside of the scope of the parties' agreement, canceled the value of his stock and thereby interfered with a known agreement for sale of that same stock to EBS. Again, at this procedural posture and assuming the allegations are true as it must, the Court finds that Tolat has alleged sufficient facts to state a cause of action for intentional interference with contractual relations.

### 3. Litigation Privilege.

Integral next argues that the litigation privilege requires dismissal of Tolat's tort counterclaims on the basis that these claims are premised upon Integral's communications made in vindication of Integral's rights under the right of first refusal which are the subject of the instant litigation. The litigation privilege under California Code of Civil Procedure Section 47(b) applies to communications made by a litigant in connection with a judicial proceeding to achieve the object of litigation. *See, e.g., Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1099 (C.D. Cal. 2006).

The litigation privilege shields, among other things, any "publication or broadcast" made "in any . . . judicial proceeding." Its "principal purpose is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 830-31 (2003). This privilege is "absolute, not qualified." *Visto Corp. v. Sproqit Technologies, Inc.*, 360 F. Supp. 2d

1064, 1068 (N.D. Cal. 2005). The privilege applies to any communication (1) made in a judicial or quasi-judicial proceeding, (2) by litigants or other participants authorized by law, (3) to achieve the objects of litigation, (4) and which has some connection or logical relation to the action. *See Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990).

Here, however, Tolat's tort allegations are based on cancellation of Tolat's shares of stock and therefore are premised upon Integral's noncommunicative conduct. Accordingly, the litigation privilege does not apply to bar Tolat's tort claims.

### 4. Judicial Estoppel.

Lastly, Integral argues that Tolat is judicially estopped from seeking to assert an inconsistent position in this litigation. Integral contends that during the proceedings over its request for a temporary restraining order, Tolat represented that "[w]ith respect to Dr. Tolat's stock, Integral has a right of first refusal and, if Integral objects to the stock sale, it can simply refuse to recognize the transfer. These significant factual issues justify denial of Integral's request [for a restraining order]." (Opp. Br. to Motion for TRO at 2.) Tolat's argument that, if he had violated the parties' stock purchase agreement, Integral could decline to transfer under the contract's terms, is not inconsistent with his current position that he complied with the agreement, but regardless Integral cancelled his stock value. Accordingly, Tolat's claims are not barred by the doctrine of judicial estoppel.

### CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Tolat's motion to dismiss and DENIES Plaintiff's motion to dismiss the counterclaims.

**IT IS SO ORDERED.**

Dated: October 25, 2013

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE