United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

INTEGRAL DEVELOPMENT CORPORATION,

    Plaintiff,

v.

VIRAL TOLAT and DOES 1-20, inclusive,

    Defendants.

No. C 12-06575 JSW

**ORDER**

Now before the Court are multiple motions for consideration: (1) motion for summary judgment filed by defendant Dr. Viral Tolat ("Tolat") on multiple causes of action and counterclaims; (2) motion for summary judgment and preliminary injunction filed by plaintiff Integral Development Corporation ("Integral"); (3) motion for sanctions for spoliation and contempt filed by Integral; (4) motion for writ of possession filed by Integral; (5) motion for relief under Federal Rule of Civil Procedure 56(d) filed by Integral; and (6) motion to strike Integral's objections to evidence filed by Tolat. Having carefully reviewed the parties' papers, considered their arguments and the relevant legal authority, the Court hereby: (1) GRANTS Tolat's motion for summary judgment; (2) DENIES Integral's motion for summary judgment and preliminary injunction; (3) DENIES Integral's motion for sanctions for spoliation and contempt; (4) DENIES Integral's motion for writ of possession; (5) DENIES Integral's motion for relief under Rule 56(d); and (6) GRANTS Tolat's motion to strike objections to evidence.

**BACKGROUND**

Integral is a software development company and managed service provides in the area of online trading and liquidity aggregation on the foreign exchange market. At the time of his departure in December 2012, Tolat was the Chief Technology Officer and Head of Integral Products and Services. In 1993, Tolat and Harpal Sandhu ("Sandhu") co-founded Integral. In 2012, Tolat, concerned about his compensation, engaged an executive search firm to explore alternate employment. In December 2012, Tolat left Integral to join a competitor, EBS Dealing Resources, Inc. ("EBS").

The Court will address additional facts as necessary in the remainder of this order.

**ANALYSIS**

**A.    Applicable Legal Standards.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"); *see also* Fed. R. Civ. P. 56(e). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(e)(3).

**B.     Tolat's Motion For Summary Judgment.**

Tolat moves for summary judgment on Plaintiff's claims one through six and eleven, as well as counterclaims one and two. The other claims alleged in the First Amended Complaint have been dismissed. (*See* Order dated October 25, 2013.)

The Court shall address each claim sequentially.

**1.     Claim One: Section 10(b) of 1934 Act.**

Integral's first claim for relief is for violation of federal securities law. Rule 10b-5 of Title 17 of the Code of Federal Regulations states that it is a violation to "directly or indirectly" and "in connection with the purchase or sale of any security," employ a device or scheme to defraud or engage in any practice that would operate as a fraud upon any person. 17 C.F.R. § 240.10b-5; *see also* 15 U.S.C. § 78j(b).

To bring a claim under Section 10(b) of the 1934 Act and Rule 10b-5, plaintiff must be a seller or purchaser of securities. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731-32 (1975). The 1934 Act defines "purchase," "buy," and "sell" to include contracts to buy or sell. *Id.* at 750-51. However, a party who holds the right of first refusal to purchase shares but does not exercise that right does not necessarily constitute a purchaser or seller. *See, e.g., Jackvony v. RIHT Financial Corp.*, 873 F.2d 411, 415 (1st Cir. 1989) (holding that there is no authority for the position that "an option holder's failure to exercise an option to buy falls within the critical language: 'purchase,' or 'contract to buy, purchase, or otherwise acquire.'").

Here, the undisputed facts establish that Integral did not actually purchase Tolat's shares. The parties disagree over whether Integral's offer to purchase Tolat's shares is

sufficiently similar to the offer by EBS as to qualify as an underlying contract to sell or purchase securities. Tolat argues that Integral's right of first refusal does not qualify as such a contract because their offer to him was so markedly different from EBS's offer that it instead constituted a counteroffer. Under California law, the Court must take a common sense approach to review the factual circumstances and "commercial realities" of the right of first refusal in order to determine whether its terms are materially equivalent to the third-party contract in order to qualify as a contract for sale. *See Arden Group, Inc. v. Burk*, 45 Cal. App. 4th 1409, 1414-15 (1996). Having now reviewed the contracts at issue and the full evidentiary record, and taken from the perspective of Tolat as the would-be seller, the Court finds that the offers to purchase his stock are not materially equivalent. The prices offered for the same stock differ on the order of nearly half the value. Integral's contention that considering elements of Tolat's salary changes the value of the stock purchase offer are unavailing. Because the factual circumstances and commercial realities of the right of first refusal demonstrate that its terms are not materially equivalent to the third-party contract, the Court finds that the right of first refusal fails to qualify as a contract for sale. Accordingly, because there is no predicate contract for sale or purchase of securities, and the claim for federal securities violations fails.

**2.      Claim Two: California Uniform Trade Secrets Act.**

To prevail on a trade secret misappropriation claim under the California Uniform Trade Secrets Act ("CUTSA"), the plaintiff must establish that it owns a clearly identified trade secret, that the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and that the misappropriation caused damage to the plaintiff. *See* Cal. Civ. Code § 3426.1; *see also Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003).

**a.      Integral Does Not Establish It Owns Clearly Identified Trade Secrets.**

Under the CUTSA, a "trade secret" is defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process" that "[d]erives independent economic value, actual or potential, from not being generally known to the public or other persons who can obtain economic value from its disclosure or use." Cal. Civ. Code §

4

3426.1(d). A plaintiff seeking relief for misappropriation of trade secrets "must identify the trade secrets and carry the burden of showing that they exist." *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993). The trade secrets that form that basis of a claim of misappropriation must be identified with sufficient particularity. *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998); *see also* Cal. Civ. Code § 2019(d) (a party alleging misappropriation of trade secrets "shall identify the trade secrets with reasonable particularity.").

The Court finds that Integral, despite having had numerous opportunities to do so, has not identified specific information that it claims to be trade secret, but rather identifies broad categories of documents that it contends contain "highly sensitive information essential to Integrals' competitive advantage." (Opp. Br. at 3.) "A description of the category, or even of the subcategories of information within a category, does not comply with the requirement to identify the actual matter that is claimed to be a trade secret." *Social Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *4 (N.D. Cal. June 14, 2012). Integral relies on its allegations that Tolat made a copy of the source code, but failure to identify the specific source code files and the information contained within them is fatal to its claim. Listing hundreds of file names without identifying the trade secret information contained within the files, is insufficient. *See FormFactor, Inc. v. Micro Probe, Inc.*, 2012 WL 2061520, at *6 (N.D. Cal. June 7, 2012).

Accordingly, the Court finds Integral has failed to meet its burden of identifying any specific trade secret information and Tolat prevails on his motion for summary judgment on this claim for this independent reason.[1] However, even if Integral had met its burden to identify a legally cognizable trade secret, the Court also finds Integral cannot prevail on its CUTSA claim as it has not met its burden of demonstrating that Tolat misappropriated any trade secret information.

---

[1] The only specifically identified information Integral alleges constitutes a cognizable trade secret is a third-party valuation of the company. However, there is no evidence that Tolat actually received or improperly used or disclosed any information contained within the valuation report.

5

### b. Integral Does Not Establish Misappropriation.

Despite undertaking extensive discovery, the Court finds that Integral has not revealed any evidence tending to demonstrate that Tolat used or disclosed any potential trade secret information to his current employer or to any other third party.[2] Integral relies on its conclusion that because Tolat downloaded a copy of Integral's source code while still employed at the company but while engaged in discussions to seek employment with a competitor, Tolat must have used the information he downloaded improperly. Despite Integral's repeated and increasingly outraged protestations, there is no evidence in the record to support this conclusion.[3]

Integral reasons that because it took EBS a shorter time to bring their competing product to market, Tolat must have shared trade secret information with his new employer. The only evidence produced in this regard is the testimony from the president of Integral, Sandhu, that based on his experience in the industry, the time frame for EBS to market its product "is

---

[2] The Court DENIES Integral's Rule 56(d) motion for additional discovery. Integral has failed to demonstrate that it diligently pursued the discovery it now seeks and has failed to set forth and specific or essential facts it hopes to elicit from the further testimony it seeks. *See Conkle v. Jeong*, 73 F.3d 909, 914 (9th Cir. 1995); *see also State of California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). Integral's "Table of Falsehoods" allegedly documenting inconsistencies in Tolat's testimony is unpersuasive attorney argument and bears no evidentiary weight. (Declaration of Jack Russo in Support of Reply Brief of Rule 56(d) Motion, Ex. 1.)

Further, Integral's objections to evidence submitted in conjunction with Tolat's motion for summary judgment, which were filed in its reply brief of its Rule 56(d) motion are both procedurally improper and substantively irrelevant to the Court's holdings. Accordingly, Tolat's motion to strike the objections is GRANTED.

[3] The evidence before the Court demonstrates that Tolat deleted all Integral information from his computer devices and cloud storage accounts, with the exception of a limited number of Integral documents retained on Tolat's Blackberry SD card. (Tolat Decl. at ¶¶ 10-12, 31-38; Declaration of Kelly A. Woodruff in Support of Opposition to Rule 56(d) Motion at ¶¶ 3-7.) The record establishes that Tolat deleted those documents before starting to work at EBS without reviewing them. (*Id.* at ¶ 38.) The Court finds no basis for sanctions for spoliation and accordingly, DENIES Integral's motion for spoliation and contempt.

With regard to Integral's application for writ of possession of the Xoom tablet or any other electronic device, the Court finds that Integral has failed to meet the standard for a writ and its application is accordingly DENIED. The Court concludes that, at most, in accordance with its own policy handbook, Integral is entitled to the applicable prorated amount of the reimbursement of the Xoom tablet. (Declaration of Patrick Barkhordarian in Support of Writ of Possession, Ex. 2.)

6

extremely short for going from an announcement to having a service ready to release to paying customers." (Declaration of Harpal S. Sandhu in Support of Plaintiff's Motion for Summary Judgment at ¶ 3.) Sandhu opines that EBS was able to compete so quickly in the market "because it hired [Tolat] and used the trade secrets he disclosed to re-fashion their aggregation services to mimic Integral. It took Integral years, and cost Integral a lot of money, to develop this intellectual property honestly and from its own original, inventive work." (*Id.* at ¶ 9.) The only facts established by this testimony is that, relative to Integral's time to market, it took EBS a shorter time to market its competing product.

For the theory that a relatively short time to market is an indicator of misappropriation of trade secrets, Integral relies upon two cases which merely note the length of time for a competing product to come to market. (*See* Opp Br. at 5-6, citing *Integrated Case Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 172 (2d Cir. 1990) and *Anaconda Co. v. Metric Tool & Die Co.*, 485 F. Supp. 410, 414-19 (E.D. Pa. 1980).) To the extent these non-binding cases note the length of time a competitor was able to get a product to market, neither court relies upon the factual predicate as a basis for its holdings. This Court does not find persuasive Integral's conclusion that Tolat must have shared its trade secret information with EBS because the company was able to get a competitive product to market more quickly than Integral.

Integral also relies on a series of email exchanges between Tolat and his current employer, EBS. However, none of the emails upon which Integral relies evidences the disclosure of any trade secret information. Rather, the correspondence evidences ongoing negotiations between Tolat and EBS regarding his potential employment. (*See* Opp. Br. at 13-15.)

Accordingly, the Court finds Integral has failed to meet its burden of demonstrating that Tolat misappropriated any trade secret information and Tolat prevails on his motion for summary judgment on the claim for this independent reason. However, even if Integral had met its burden to identify a legally cognizable trade secret and had produced evidence of

7

misappropriation, the Court also finds Integral cannot prevail on its CUTSA claim as it has not demonstrated that it has suffered damages as a result of any alleged misappropriation.

### c. Integral Does Not Demonstrate Resulting Damage.

Lastly, in order to state an actionable claim for trade secret misappropriation, a plaintiff must show that the alleged misappropriation caused damage. *See, e.g., FormFactor,* 2012 WL 2061520, at *13 (holding that plaintiff "provided no concrete evidence connecting the alleged misappropriation of a trade secret to the loss of . . . business" but rather "simply stated it must have been [defendant's] going to [plaintiff's competitor] that caused the loss of business.") Integral has claimed damages in the amount of $10,000,000 for alleged trade secret misappropriation, but has not supported its claim with actual evidence in the record that a drop in its revenue stream was caused by any alleged misappropriation by Tolat. Accordingly, the Court finds Integral has failed to meet its burden of demonstrating that Tolat caused Integral to suffer damages as a result of any misappropriation and Tolat prevails on his motion for summary judgment on the claim for trade secret misappropriation for this additional reason.

### 3. Claim Three Through Six Under Common Law.

#### a. Preemption.

Tolat argues that the common law tort causes of action for breach of fiduciary duty (claim four), breach of duty of loyalty (claim five), and intentional interference with prospective business advantage (claim six) are preempted by California's Uniform Trade Secrets Act and therefore fail as a matter of law. The CUTSA provides for the recovery of damages due to injury in an action premised upon misappropriation of trade secrets. *See* Cal. Civ. Code § 3426.3. Common law "remedies based on misappropriation of trade secrets are superceded" by the UTSA because it "occupies the field in California." *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 953-54 (N.D. Cal. 2003); *see also Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (holding that the UTSA preempts common law claims that are "based on the same nucleus of facts as the misappropriation of trade secrets"). The Court agrees that each of Integral's common law tort and breach of contract claims are premised upon the same set of operative facts as the misappropriation claim.

8

The tort claims are explicitly pled based on allegations that Tolat misappropriated Integral's trade secret information and caused the company to suffer injury as a result of misusing its proprietary information. (*See, e.g.,* FAC at ¶¶ 82, 84, 92, 98.)

In addition, although the CUTSA does not affect contractual remedies, Integral's breach of contract claim is based on its allegations that Tolat misappropriated trade secrets. (*See id.* at ¶ 75.) Simply alleging there was a breach of contract claim does not save the claim from preemption. *See First Advantage Background Servs., Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 936-37 (N.D. Cal. 2008) (where the facts plaintiff pled in support of breach of confidence claim were "identical to those it offered in support of its misappropriation claim" and "[t]he only difference alleged [was] the existence of a contract," court held this was "inadequate to avoid preemption"); *cf Angelica Textile Servs., Inc. v. Jaye Park*, 220 Cal. App. 4th 495, 508 (2013) (holding that breach of contract claims, even where premised upon misappropriation of trade secrets, are not displaced by UTSA).

However, even without UTSA preemption, the Court finds each of Integral's breach of contract and common law tort claims lack merit.

### b. Claim Three for Breach of Contract.

In order to state a claim for breach of contract, a plaintiff must prove a contract exists, plaintiff's performance or excuse for non-performance, defendant's breach, and resulting damages. *See, e.g., CDF Firefighters v. Maldanado*, 158 Cal. App. 4th 1226, 1239 (2008). Integral alleges breach of several contracts – Nondisclosure Agreement, Employment Agreement, and Inventions Agreement – based on Defendant's alleged misuse of Integral's trade secrets. (*See* FAC at ¶¶ 73, 75.) As the Court has determined that Integral may not prevail on its cause of action for trade secret misappropriation, its breach of contract claim premised upon misappropriation fails as a matter of law.

Integral also contends that Tolat breached the Stock Purchase Agreement ("SPA") by providing inaccurate and incomplete information to Integral regarding the terms of the proposed sales of his own Integral stock to EBS, thereby causing Integral not to be able to exercise its right of first refusal. (*See id.* at ¶ 76.) However, the evidence in the record establishes that

9

Tolat complied with his obligations under the SPA which required that he provide Integral with a "written Transfer Notice . . . describing fully the proposed transfer, including the number of Purchased Shares proposed to be transferred, the proposed transfer price, the name and address of the proposed Transferee and proof satisfactory to [Integral] that the proposed sale or transfer will not violate any applicable federal or state securities laws." (*See id.*, Ex. 2 at 5.) The record is replete with evidence that Tolat was in contact with EBS in an effort to secure alternative employment and to sell his shares of Integral stock. However, the evidence demonstrates that Tolat complied with his obligations under the contract by providing Integral with a written Transfer Notice of the stock purchase offered he had received from EBS, containing all of the required information. (*See* Declaration of Anthony P. Schoenberg, Ex. 28.) Integral's repeated mischaracterizations of the evidence are not persuasive and do not provide an evidentiary basis for their breach of contract claim. Accordingly, Integral's claim for breach of contract fails on the merits.

          **c.**     **Claims Four and Five for Breach of Fiduciary Duty and Breach of Duty of Loyalty.**

Breaches of fiduciary duties and the duty of loyalty require the existence of the duties, their breach, and damages proximately caused by the breach. *See, e.g., Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 524 (2008); *see also Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410 (2007). Integral's breaches of fiduciary duties and loyalty claims premised upon Tolat's alleged misappropriation of trade secrets fail as a matter of law as the Court has found no misappropriation. To the extent Integral bases the claims for breaches on the usurpation of corporate opportunities for the company, the evidence establishes that this claim also is not viable.

The corporate opportunity doctrine provides that a fiduciary may not acquire "in opposition to the corporation, property in which the corporation has an interest or tangible expectancy." *Robinson, Leatham & Nelson, Inc.*, 109 F.3d 1388, 1392 (1997) (quoting *Kelegian v. Mgrdichian*, 33 Cal. App. 4th 982, 988 (1995)). A "corporate opportunity exists when a proposed activity is reasonably incident to the corporation's present or prospective business and is one in which the corporation has the capacity to engage." *Id.* In order to state a

10

1 claim for breach of fiduciary duties by usurpation of a corporate opportunity, the company must
2 have an actual opportunity that the fiduciary usurped from it. *See Premier Displays & Exhibits*
3 *v. Cogswell*, 2009 WL 8623588, at *9 (C.D. Cal. Dec. 23, 2009).

4 Here, the evidence in the record establishes that the discussions regarding the potential
5 deal between EBS and Integral were at their very preliminary stages. The undisputed evidence
6 indicates that at the time of discussions between the companies, EBS considered its potential
7 investment interest in Integral to be preliminary and no actual investment decision was made.
8 (*See* Declaration of Anthony P. Schoenberg, Exs. 10, 11.) Because the record does not support
9 the position that there was a tangible expectancy of a corporate opportunity for Integral, there is
10 no support for the claim that Tolat usurped one. Secondly, there is no evidence in the record to
11 support Integral's position that the preliminary talks with EBS, which related to large-scale
12 investment, were defeated by a small-scale purchase of Tolat's minority interest in the
13 company. Accordingly, Integral's claims for breach of the fiduciary duty and duty of loyalty
14 lack merit.

        **d.**    **Claim Six for Intentional Interference with Prospective Business Advantage.**

17 In order to state a claim for intentional infliction of emotional distress, a plaintiff must
18 allege "an economic relationship between the plaintiff and some third party, with the probability
19 of future economic benefit to the plaintiff." *Korea Supply Co. v. Lockheed Martin Corp.*, 29
20 Cal. 4th 1134, 1153 (2003). The claim must relate to "interference with *existing* noncontractual
21 relations, so that a plaintiff must "demonstrate a reasonable probability of future economic
22 advantage." *Westside Ctr. Assocs. v. Safeway Stores 23 Inc.*, 42 Cal. App. 4th 507, 524 (1996)
23 (emphasis in original). For the same reasons the Court found there was no evidence to support
24 a finding of a tangible expectancy of a corporate opportunity, the Court finds based on the
25 record, that there is no evidence of an established economic relationship between Integral and
26 EBS with the probability of future economic benefit with which Tolat may have intentionally
27 interfered. Accordingly, Integral's claim for intentional interference with prospective business
28 advantage lacks merit.

### 4. Claim Eleven: Copyright Infringement and Violations of 17 U.S.C. § 1201.

"To be entitled to sue for copyright infringement, the plaintiff must be the legal or beneficial owner of an exclusive right under a copyright." *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005). To prevail on a claim for copyright infringement, a plaintiff "must establish ownership of a valid copyright and unauthorized copying of original elements of the protected work." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Additionally, in order to sue for copyright infringement, "the infringement must be 'committed while he or she is the owner of' the particular exclusive right allegedly infringed." *Id*. at 885 (quoting 17 U.S.C. § 501(b)). A claim for violation of 17 U.S.C. § 1201 requires that "defendant's access was unauthorized." *Chamberlain Grp. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1193 (Fed. Cir. 2004).

In its complaint, Integral merely alleges without further specificity that it "has applied to the U.S. Copyright Office at the Library of Congress to register its copyrights to its proprietary source code and other copyrighted expression in its computer programs." (FAC at ¶ 138; *see also* Declaration of Jack Russo in Opposition, Ex. 2.) Integral further alleges that Tolat, while still employed by the company, downloaded some portion of the source code. Tolat confirms that he did in fact download a portion of the source code while still employed, as part of his regular duties and within the scope of his employment. (Declaration of Tolat at ¶¶ 16-25.) Integral confirms in its complaint that Tolat, as part of its "most senior executive staff . . . had detailed access to virtually all of Integral's trade secret information and confidential and proprietary intellectual property." (FAC at ¶¶ 8, 16.) Therefore, there is no dispute that Tolat had the authority to and did in fact download copyrightable materials. However, from the record before the Court, there is no evidence to support the contention that Tolat copied any protectable, actually copyrighted elements of Integral's source code without Integral's authorization. Integral's conclusion that the copied source code was used for illegitimate purpose is not supported by the evidence, as addressed in the Court's analysis on the claim for misappropriation. Accordingly, the claim for copyright infringement lacks merit.

12

### 5. Tolat's Counterclaims for Conversion and Breach of Contract.

Tolat asserts counterclaims for conversion and breach of contract for the value of his stock represented by Share Certificate No. CS-603. (Tolat Decl. at ¶ 40; Ex. 9 attached to Counterclaims.) Integral has taken the position that Tolat, having failed to comply with his contractual obligations and during the pendency of this litigation, does not merit the payment on his shares of the company's stock. Integral represents that it has "escrowed the certificate for the contested shares." (Opp. Br. at 24.) The Court finds that Tolat prevails on his motion for summary judgment and that Tolat complied with his contractual obligations. However, the precise stock valuation is unclear. The Court shall refer this matter to Magistrate Judge Corley for further evaluation and settlement discussions in light of this order.

**C.     Integral's Motion for Summary Judgment and for Preliminary Injunction.**

For all of the reasons the Court grants Tolat's motion for summary judgment, it denies Integral's motion. Injunctive relief is not merited.

### CONCLUSION

For the foregoing reasons, the Court (1) GRANTS Tolat's motion for summary judgment; (2) DENIES Integral's motion for summary judgment and preliminary injunction; (3) DENIES Integral's motion for sanctions for spoliation and contempt; (4) DENIES Integral's motion for writ of possession; (5) DENIES Integral's motion for relief under Rule 56(d); and (6) GRANTS Tolat's motion to strike Integral's objections to evidence.

There remain no further claims in this matter for adjudication. However, before entering judgment and tolling the clock for appeal, the Court HEREBY REFERS the matter of the valuation of the stock and discussions of settlement in light of this Order to Magistrate Judge Corley.

Lastly, the Court HEREBY SETS a further status conference for April 25, 2014 at 11:00 a.m. The parties' joint status statement shall be filed no later than April 18, 2014. The Court is

///

///

amenable to continuance of the status conference should the parties require more time and so stipulate.

**IT IS SO ORDERED.**

Dated: February 24, 2014

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE