```
                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

        Before The Honorable Laurel Beeler, Magistrate Judge
```

| | | |
|---|---|---|
| INTEGRAL DEVELOPMENT CORP., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| VS. | ) ) | No. C 12-6575 JSW (LB) |
| VIRAL TOLAT, an individual, and DOES 1-30, | ) ) ) | |
| Defendants. | ) ) | Pages 1 - 18 |

```
                              San Francisco, California
                              Thursday, May 30, 2013
```

**TRANSCRIPT OF PROCEEDINGS OF THE**

**OFFICIAL ELECTRONIC SOUND RECORDING**

**APPEARANCES**:

For Plaintiff (By telephone):
    ComputerLaw Group LLP
    401 Florence Street
    Palo Alto, California  94301
 BY: **JACK RUSSO, Attorney at Law**
    **ROBERT LUX, Attorney at Law**

For Defendants (By telephone):
    Katten Muchin Rosenman LLP
    575 Madison Avenue
    New York, New York  10022-2585
 BY: **STEVEN ECKHAUS, Attorney at Law**

Transcribed By:  Candace Yount, CSR# 2737, RMR, CCRR
       Contracted Court Reporter/Transcriber
       candace.yount@gmail.com

    Computerized Transcription By Eclipse

1  <u>Thursday - May 30, 2013</u>                                    <u>12:49 p.m.</u>

2                          **P R O C E E D I N G S**

3                                 ---o0o---

4          **THE CLERK:** Calling civil action C 12-6575, Integral

5   Development Corp. vs. Tolat.

6       Counsel, please state --

7          **MR. RUSSO:** Jack --

8          **THE CLERK:** -- your appearances.

9          **MR. RUSSO:** Jack Russo with Rob Lux here on behalf of

10  plaintiff -- plaintiff Integral Development Corporation.

11         **THE CLERK:** I'm sorry.  Rob who?

12         **MR. ECKHAUS:** Repeat that.

13         **MR. RUSSO:** Lux, L-U-X.

14         **THE CLERK:** Thank you.

15         **MR. ECKHAUS:** Steve Eckhaus here for -- for Viral

16  Tolat.

17         **THE COURT:** All right.  Okay.  So thank you for your

18  letter.  Just give me a second to pull it out.

19      You know, I know that you had two rounds with Judge

20  Corley, so that's fine.  I would have hopped on you a little

21  faster but I thought, gee, if you'd gotten through that

22  process, maybe you wouldn't need me at all.  I see that you do,

23  and that's fine.

24      Let me just tell you my reaction and let's see what we can

25  do to talk about this.

1           (Court Call phone ringing.)
2       **THE COURT:** Let's just see.
3    So, look, when we -- when last we talked about the
4  forensic analysis of the computer hardware, you weren't --
5           (Court Call phone ringing.)
6       **THE COURT:** And I hear a phone ringing.
7    Okay. It's gone now. That's fine.
8           (Court Call phone ringing.)
9       **MR. RUSSO:** It's not -- It's not here on my line. I
10 don't know. I hear it, too.
11      **THE COURT:** It's fine.
12      **MR. ECKHAUS:** Yeah, I hear it, but I don't -- nothing
13 here.
14      **THE COURT:** Okay. All right. We'll just try not to
15 let it distract me too much.
16   So last time, with my last order, we -- although we talked
17 about Dropbox, our conversation about Dropbox was very much in
18 the context of making sure Mr. Tolat didn't have anything that
19 he wasn't supposed to. So that was that.
20   And we had a slightly broader conversation about the
21 analysis of the personal computer, which is, we -- And, as all
22 my orders, you know we talked about before because you were
23 part of that conversation. And we did talk a little bit more
24 about more of a forensic analysis of the computer to kind of
25 track what happened.

1   I mean, from Integral's perspective, they could see
2 certain things, I'll just say, forensically from its own
3 computers; hence, the identification of information being
4 uploaded to Dropbox.
5   And then -- And we know the issues that attend the
6 computer.  We talked about them and we came up with a process
7 to address it.
8   And our conversation about the Dropbox was different.
9 However -- And I'm just going to tell you my -- my own
10 reactions to this and then we'll talk about what we can really
11 do.
12   But now it seems to me that -- that -- that one of the --
13 one big thing that matters to Integral -- and you guys have had
14 substantial, substantial settlement talks -- and I really
15 understand the -- the issues that attached to your litigation
16 given the long-standing relationship, and then all of the
17 context that the postemployment behavior -- an employment
18 behavior raises from Integral's perspective.  I'm not -- I'm
19 only describing that for context.
20   So what I see from Integral's subpoena -- and I'm not
21 opposed to some of this in concept -- is this desire to do some
22 kind of a forensic evaluation from the client's perspective
23 because it -- you know, it seems to matter, because you told
24 Judge White it matters.
25   You signal to me, by the fact that you had a very full day

1  and some the next day with Judge Corley, that the discovery
2  issues need -- must need to be resolved from Integral's
3  perspective and might not need to be from the client's
4  perspective.
5      And so with -- And it is also true that the last time that
6  I -- when I -- And, you know, it is what it is.  I -- I -- I --
7  I guess maybe I would have brought up the existence of the
8  subpoena to Dropbox because it's always true that the providers
9  in these cases are not just going to give you the information.
10 They are going to tell the account holder that you've asked for
11 the information.
12     I mean, Dropbox is newer and so it is also newer in its --
13 in its procedures for complying with, you know, the -- the
14 rules that -- the electronic -- sort of Electronic
15 Communications Act.  So maybe if -- I just get it, but it
16 seemed like that was unlikely.
17     Anyway, I'm not opposed in principle.  I would have
18 brought it up.  I think that would have been the better course.
19 But you didn't, and here we are and we're looking forward, not
20 behind us.
21     I see the potential relevance of the subpoena.  And I
22 wanted to talk to you about -- And I think you sort of brought
23 it up but you didn't.  And then there are a couple of issues.
24     So let me start with something very, very, very simple.
25 This is from plaintiff's perspective.  What -- Or not

1  plaintiff's perspective.  Mr. Tolat's perspective.

2     Dropbox, at least without fighting about it, is willing to
3  produce subscriber information.  I don't see any particular
4  harm in that, and I believe that Integral had said -- Although
5  I'm going to have a bigger conversation with you about it than
6  just this.

7     But Integral had said, right now, the subpoena's about
8  that because we're still working it out with Dropbox.  And I
9  want to let you know, from Mr. Tolat's perspective, that I am
10 going to address the larger issue.

11    But do you care about the subscriber information from
12 Mr. Tolat's perspective?

13        **MR. ECKHAUS:**  No.  I'm fine with giving it.

14        **THE COURT:**  Okay.  All right.  That takes care of the
15 easier issue.

16    Now -- Now, here's the second issue, which is the harder
17 issue, but -- but I think there's a -- there's a way of dealing
18 with it, but then -- and I just think we just need to cut to
19 it.

20    You know, Integral's desire -- and it's relevant and it's
21 discoverable -- to reconstruct a forensic analysis of what
22 Mr. Tolat did or didn't do -- and I've already said what I feel
23 strongly is, that's fair -- and the reason we came up with the
24 independent expert approach was to protect the private
25 information, not just of Mr. Tolat but also of new employers,

1   so there -- and I did try to address them.

2       And there may be overbreadth issues, but it seems to me
3   that, if this were me, maybe I'd want to stage it and do my
4   forensic -- evaluation, and I just want to -- seemingly proud
5   of this approach.

6       But I'd want to do the forensic evaluation of what
7   Mr. Tolat's computer does or doesn't show.  From Integral's
8   perspective, that might not be dispositive because he might
9   have -- the nature of Dropbox is, maybe he downloaded things to
10  other employers.

11      I don't even know what kind of information Dropbox really
12  can produce, but I do that one way that Dropbox can tell us
13  that, if the parties stipped where there's some kind of a
14  Protective Order and it's done through the third-party expert
15  mechanism that I previously set up, I'm sure we can sort this
16  out in a way that gets Integral the information it wants
17  without affecting Mr. Tolat's privacy concerns.

18      And so I wanted to ask, you know, again from defendant's
19  perspective, from Mr. Tolat's perspective, what's your reaction
20  to, at least conceptually, that approach which takes care of
21  your concerns and addresses the discoverability issues that are
22  implicated by Integral's subpoena of Dropbox?

23          **MR. ECKHAUS:**  I think that's fine.  And I think that's
24  really what we've already offered.  I -- I -- Really, we -- we
25  at least offered precisely that.

1     I mean, we -- we -- I -- I mean, I think it -- I
2  (unintelligible) offered the following.  In fact, we -- we
3  instructed the expert to do the -- to do the following,
4  (unintelligible) in pulling things up.  I think we did five or
5  six of these in -- in the opposition.
6     So I wanted review the file provided Integral, that they
7  would identify the files that -- that Dr. Tolat uploaded to
8  Dropbox, confirm the positive exist -- existence of the
9  account, make sure that's the right account, then determine
10 which of the files and the date on which they deleted.
11    Then determine whether any Integral's files were extracted
12 from Dropbox account -- an other Dropbox account with any other
13 media.  They provide a list of all the files in the account,
14 file name, file description, file location, category
15 information, Integral data, if any, and maybe Integral copies
16 the data and any information as far as personal data would
17 include EDX, his (unintelligible) new employer.
18    That -- The only thing we're really putting off limits
19 are -- are the files of the new employer uploaded to Dropbox.
20 If those were encrypted files, any passwords, and try to find
21 privileged communication.
22    So I -- I thought we basically had -- had agreed to
23 everything that was rationally, reasonably requested.  Frankly,
24 I think the only reason we're here is because there was a
25 preexisting subpoena which we weren't aware of, and nobody

1  was -- You weren't aware of it.  I wasn't aware of it.
2          **THE COURT:**  Okay.
3          **MR. ECKHAUS:**  I think that's the point of the hearing.
4  I mean, the -- the subpoena was served on April 9th.  We didn't
5  find out about it until April 25th.
6          **THE COURT:**  Yeah.
7          **MR. ECKHAUS:**  There's an issue about that, but that
8  happened.
9     I -- I just think we -- I think we -- We've agreed that we
10 can -- it's reasonable, and go -- going through the -- through
11 the -- through the third-party independent examiner we
12 retained.
13         **THE COURT:**  Okay.
14         **MR. ECKHAUS:**  And I -- I -- I -- I'm just sort of at a
15 loss for why we're even having this --
16         **THE COURT:**  Okay.  And here's -- Look, Integral
17 doesn't trust Dr. Tolat.  That is -- Whether that's fair or
18 not, I'm just saying.  So that's what -- I mean, that's why
19 they --
20         **MR. ECKHAUS:**  But -- But the --
21         **THE COURT:**  And I'm -- That's why we're here.
22         **MR. ECKHAUS:**  But the independent expert --
23         **THE COURT:**  Right.  That's why they retained an
24 expert.
25    So one issue is, is, how are you doing that -- that

Dropbox analysis? Are you doing it just based on your -- the independent experts being able to have access -- full access to the Dropbox account?

  **MR. ECKHAUS:** Right. That's correct. He has access to it and, you know, if there's anything else he needs, I'm happy to, you know, get in touch with Dropbox and give them authorization.

  **THE COURT:** And, so -- so here's the --

  **MR. ECKHAUS:** He said he can -- I think --

  **THE COURT:** Okay. That's fine.

  So, from -- from plaintiff's perspective, from Integral's perspective, you know, there's the trust but verify and your -- your view probably is that you get the information from the source, Dropbox. Then -- Then you could trust the information's adequate and I would -- you know, one way of addressing those trust issues. This is leaving aside the burden issues, but which, as articulated by Dropbox, are substantial.

  So, normally, I'd just fix it by directing disclosure of the subpoena -- subpoenaed information to the expert as is necessary for the forensic evaluation.

  I don't know if it's necessary or if it's not. I don't know if the procedure set up by defendant are necessary or not. The tech people are the people that can tell you that. My guess is that they are sufficient if Mr. Tolat is giving access

1  to his password but, as I like to say, I wouldn't swear to it
2  under penalty of perjury.
3      So -- So, that being said, I -- I -- I hear the trust
4  issues.  I'm happy to address solutions that accommodate
5  Integral's interests, but Dropbox has articulated burdens.
6      So what I would suggest -- And then from plaintiff's
7  counsel's perspective, you can tell me if I'm missing
8  something.
9      I would say that the -- the sort of sane thing to do is
10 adopt the proposal of the third party expert -- the independent
11 expert, have him do his analysis.  If there's more that the
12 experts agree ought to be provided that can be provided
13 through -- that ought to be provided from Dropbox, but you all
14 can agree that essentially to narrow or stage the scope of your
15 subpoena to Dropbox, but rather than have it produced to you,
16 have it produced to the independent expert working with Dropbox
17 on the burden issues.
18          **MR. RUSSO:**  Your Honor, Jack -- Jack Russo here.
19     We -- We were on the phone with Mr. Eckhaus for about a
20 half hour before we got on to --
21                (Court Call phone ringing.)
22          **MR. RUSSO:**  -- Court Call here.  And we proposed, and
23 he rejected, that the subpoenaed information simply be turned
24 over to the neutral expert, all of it, because there's things
25 that have occurred here -- and he actually confirmed that they

1   had occurred -- such as Mr. Tolat, after leaving the
2   employment, after starting with EBS, changing the names of
3   files that originated from Integral to more generic names.
4   That would all be disclosed by produced information --
5           **THE COURT:**  Okay.
6           **MR. RUSSO:**  -- produced by the subpoenaed party.
7           **THE COURT:**  Okay.
8           **MR. RUSSO:**  That may not be disclosed in the console
9   information that's available to the end-user.
10          **THE COURT:**  Totally fair.
11          **MR. RUSSO:**  All of that --
12          **THE COURT:**  Totally fair.
13          **MR. RUSSO:**  -- metadata, all of that, this file was
14  changed to this name at this time and this date.
15          **MR. ECKHAUS:**   (Beginning to speak.)
16          **MR. RUSSO:**  This file was given access to -- If I
17  may -- If I may finish just for the record.  I think it's being
18  electronically recorded.
19          **THE COURT:**  It is.
20          **MR. RUSSO:**  If I may finish, Steve, I'd appreciate it.
21     Just that all of that data should be supplied over to the
22  neutral expert directly from Dropbox.
23     If they have an issue of burden or cost, we can address
24  that with them.  It's all electronic data that can be uploaded
25  and moved to the expert, and the expert can be told to follow

the instructions of the Court with respect to it.

That has no privacy issues at all.  What's going on here, unfortunately in our view -- and I've expressed this very clearly to Mr. Eckhaus -- is the cat-and-mouse game.

Over and over again, I keep saying, we need to see all cards turned face up.  This man was a fiduciary through December 31, 2012, in our view, and he had obligations to us both under fiduciary principles and under contract law and trade secret law, and we don't see that he has complied and we don't see that he is even trying to comply.

**THE COURT:**  Right, right, right.  So --

**MR. RUSSO:**  The first view I had from Mr. Eckhaus is that we were going to get, as part of an overall process, direct access to the actual Dropbox ourself through our own forensic expert Mr. Bariel (phonetic).  That changed at some point.  Without explanation, that changed.

We subpoenaed Dropbox because we knew from other cases you cannot get all the information from the console.  Dropbox itself has other data that they can supply pursuant to the subpoena.

**THE COURT:**  No, that's fine.  I --

**MR. RUSSO:**  So to do that --

**THE COURT:**  I'm fine with --

**MR. RUSSO:**  He did finally objected.  I had sent a letter.  I have to look at a calendar.  He missed by I don't

1   how many days or perhaps over a week.
2           **MR. ECKHAUS:** Wait, wait, wait, wait.
3                   (Crossover speaking.)
4           **THE COURT:** Hey, kids.
5                   (Crossover speaking.)
6           **THE COURT:** Kids.
7           **MR. ECKHAUS:** I (unintelligible) the subpoena
8   (unintelligible) --
9           **THE COURT:** Kids.
10          **MR. ECKHAUS:** -- (unintelligible) April 9th.  I didn't
11  get a letter from you till April 25th that you had served it
12  and the only reason I got those is because Dropbox sent a
13  letter to Dr. Tolat.
14          **THE COURT:** Counsel.
15                  (Crossover speaking.)
16          **THE COURT:** Hello.
17                  (Crossover speaking.)
18          **THE COURT:** Hello.
19          **MR. ECKHAUS:** You told me yesterday --
20          **THE COURT:** Counsel.
21          **MR. ECKHAUS:** -- that -- that there was a file which
22  contained (unintelligible) --
23          **THE COURT:** Counsel, you need to stop talking,
24  please --
25                  (Crossover speaking.)

1 **THE COURT:** -- whoever's talking.

2 (Crossover speaking.)

3 **THE COURT:** You guys.

4 (Crossover speaking.)

5 **THE COURT:** So, you guys, stop, stop, stop, stop, stop, stop, stop.

7 Sorry, guys. You can't -- I can't talk over you. Court Call, you guys -- All right. Here's how it's going to go.

9 This is why the information -- First of all, because of our Court Call, because of the day of sequestration, we're doing electronic recording, I recognize your voices because I feel I know you so well at this point.

13 That being said, you're supposed to say your name before you talk in case you need to have this transcribed. For that, I can help the court reporter because I do recognize your voices.

17 Second, I -- This -- This is a wonderful illustration of why the information needs to be produced because, from Mr. Tolat's perspective, he is never going to be out of this unless all the cards are turned over, and that's -- you've heard Integral will not settle. And you're making good progress. Everybody needs to know what's -- what the situation is, so you guys can take a collective deep breath and move on.

24 So -- So, I hear from Integral, and I accept, and the independent expert can modify or address this in the context of

1  the actual evaluation that there is objective information that
2  one gets from the service provider that is not provided by user
3  access.  Fair enough.
4      I want to be -- I'm going to write an order that's sort of
5  mindful of the Dropbox burden issues but that allows this
6  process to happen.  Because -- From Mr. Tolat's perspective,
7  I'm actually doing him a favor by eliminating it.  Whatever it
8  is, it is discoverable, and it matters from a settlement
9  perspective.
10     So, from your perspective, Mr. Eckhaus, knowing that we're
11 going to manage it through the independent expert, knowing that
12 we are going to preserve all privacy issues that have nothing
13 to do with Integral, is there anything else that you think
14 would be important to add here?
15     I -- I realize that emotions run strong in this case, and
16 that's okay, but this is purely about the discovery.
17     So from this process that I set up, is there any issue
18 with that from Mr. Tolat's perspective?
19         **MR. ECKHAUS:**  As long as -- As long as we respect
20 privacy issues and privileges.
21         **THE COURT:**  Not a problem.
22         **MR. ECKHAUS:**  And the -- And the -- And the password
23 files that -- There's probably passwords.  I'm happy with
24 everything going through the independent expert.
25         **THE COURT:**  Perfect.

1    **MR. ECKHAUS:** As long as we've got it going that
2  independent expert, I'm -- I'm fine, frankly.
3        **THE COURT:** Okay.  Good.  All right.  Good.
4     And then -- And then cc -- All right.  So I'm going to
5  kick out an order.  I'll try to do it today.  I have a crazy
6  scheduled day but I'll get out an order at some point just to
7  clarify the lay of the land and that's how we'll stage it.
8     Thank you very much --
9        **MR. RUSSO:** Your Honor --
10       **THE COURT:** -- for your --
11       **MR. RUSSO:** Your Honor, Jack Russo --
12       **THE COURT:** Yes.
13       **MR. RUSSO:** -- just to make one remark.
14    It's the first I've ever heard that there are some files
15 that are locked with a password that Mr. Tolat put in.  If
16 those files are --
17       **MR. ECKHAUS:** (Unintelligible).
18       **MR. RUSSO:** -- (unintelligible) form, whether claims
19 of the compilation of public data --
20       **MR. ECKHAUS:** (Unintelligible).
21       **MR. RUSSO:** -- our data or otherwise, and a password
22 was inserted, we don't agree that somehow he can magically
23 control that file.
24       **THE COURT:** You know, usually, that's not what he --
25       **MR. RUSSO:** (Unintelligible).

1      **THE COURT:** Mr. Russo.

2      **MR. ECKHAUS:** (Unintelligible).

3      **THE COURT:** Hello.

4      **MR. RUSSO:** (Unintelligible).

5      **THE COURT:** You're misunderstanding him. You're
6 misunderstanding him.

7   He just doesn't want you to have the password. He's not
8 saying you can't have the file to the extent it's
9 Integral-related.

10     **MR. ECKHAUS:** Right.

11     **THE COURT:** Yeah. So -- So this -- this is -- I -- I
12 know exactly what needs to be done here and I will issue an
13 order doing it.

14   And thank you very much for participating.

15     **MR. RUSSO:** Thank you, Your Honor.

16     **THE COURT:** Okay.

17     **MR. ECKHAUS:** Thank you very much, Judge.

18            (Court adjourned at 12:49 p.m.)

**CERTIFICATE OF TRANSCRIBER**

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U. S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____
Candace Yount, Transcriber

Monday, April 14, 2014