UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Laurel Beeler, Magistrate Judge

INTEGRAL DEVELOPMENT CORP., a ) 
Delaware corporation, ) 
                          ) 
       Plaintiff, ) 
                          ) 
  VS. )       No. C 12-6575 JSW (LB) 
                          ) 
VIRAL TOLAT, an individual, ) 
and DOES 1-30, ) 
                          ) 
       Defendants. ) 
_____ )       Pages 1 - 13

San Francisco, California
Thursday, September 12, 2013

**TRANSCRIPT OF PROCEEDINGS OF THE**
**OFFICIAL ELECTRONIC SOUND RECORDING**

**APPEARANCES**:

For Plaintiff (By telephone):
                ComputerLaw Group LLP
                401 Florence Street
                Palo Alto, California  94301
        BY: **JACK RUSSO, Attorney at Law**
             **ROBERT LUX, Attorney at Law**

For Defendants (By telephone):
                Farella, Braun & Martel LLP
                Russ Building
                235 Montgomery Street
                Suite 3000
                San Francisco, California  94104
        BY: **STEPHANIE P. SKAFF, Attorney at Law**

(Appearances continued on next page)

Transcribed By:      Candace Yount, CSR# 2737, RMR, CCRR
                    Contracted Court Reporter/Transcriber
                    candace.yount@gmail.com

Computerized Transcription By Eclipse

**APPEARANCES (Continued):**

For Third-Party EBS:

                  Gibbons, P.C.
                  One Gateway Center
                  Newark, New Jersey  07102
        BY:  **CHRISTINE A. AMALFE, Attorney at Law**

                  Keller, Sloan, Roman & Holland LLP
                  555 Montgomery Street
                  17th Floor
                  San Francisco, California  94111
        BY:  **KENNETH E. KELLER, Attorney at Law**

1   Thursday - September 12, 2013                    9:37 a.m.

2                    **P R O C E E D I N G S**

3                         **---oOo---**

4        **THE CLERK:**  Calling civil action C 12-6575, Integral

5   Development Corporation versus Tolat.

6        And, counsel, we are making a digital recording.  If you

7   could state your name on the record when you speak, that would

8   be great.

9        Thank you.

10        **MR. RUSSO:**  Jack Russo, Rob Lux, for plaintiff

11   Integral.

12        **THE COURT:**  Mr. Russo, good morning.

13        **MR. RUSSO:**  Good morning.

14        **MS. AMALFE:**  Christine Amalfe for EBS.  I'm from

15   Gibbons in New Jersey.

16        **THE COURT:**  Okay.  Good morning.

17        **MR. KELLER:**  Ken Keller for EBS.  I'm with Keller,

18   Sloan, Roman & Holland.

19        **THE COURT:**  Okay.

20        **MS. SKAFF:**  Your Honor, this is Stephanie Skaff at

21   Farella Braun Martel for defendant Viral Tolat.

22        **THE COURT:**  All right.  Good morning, Miss Skaff.

23        So -- So let's just look at the letters that -- I'm

24   sorry -- I'm just starting to get out.

25        What I'm looking at -- let me just see -- is the -- You

1    know, where I'm picking up the respective argument sort of most

2    specifically are in -- I don't know the document -- in

3    Exhibit 9, which is Mr. Russo's letter, and I'm just describing

4    this.

5        The brief that was filed really sets out EBS's position,

6    and it's really responding to how Mr. Russo queued up what he's

7    asking for now.

8        So -- So I'm just looking at those side-by-side.  I mean,

9    I obviously read everything that you submitted to me but those

10   seems to -- those seem to boil down on the subject areas.

11       So -- So . . .

12                        (Pause in proceedings.)

13       **THE COURT:**  Let me just look.  Sorry.  I looked at

14   this all last week, so I'm just refreshing my recollection with

15   the notes I wrote down.

16       So, for the first issue, communications by Mr. Tolat

17   during 2012.  That was the proposed limitations.

18       And, look, you know, maybe I'm just wrong on this, but it

19   seemed to me that there was some areas of agreement.  EBS says

20   something along the lines of the following:  We aren't going to

21   do anything until we've worked it all out.

22       That's not what I'm going to do.  There may be areas where

23   we'll start and we'll come back and look at things, but we're

24   going to start to get the ball rolling.

25       So for the first category, which is the communications in

 1  2012, that's what -- Well, from EBS's perspective -- Well,

 2  Mr. Russo, that's what you asked for, for 2012, and -- and,

 3  from EBS's perspective, why wouldn't you do that?  It's before

 4  the hire date.

 5       **MS. AMALFE:**  Your Honor, my understanding -- this is

 6  Christine Amalfe.

 7       My understanding is what Mr. Russo is looking for in that

 8  first category of communications by Tolat is every

 9  communication Tolat has provided or sent or received after his

10  hire date to the present.

11       **THE COURT:**  No, they -- they -- He narrowed his -- He

12  narrowed his -- So, Mr. Russo, you narrowed your -- At least

13  for starters, you narrowed your request.

14       And -- And I will just say that we'll start with -- You

15  know, the -- the strategy that we use is we start, we see what

16  you get.  That helps Mr. Russo decide what more he needs.  We

17  don't prevent coming back and looking for more.  And we start

18  with what's reasonable and illuminating, and that lets people

19  be strategic, targeted and useful about their discovery.

20       So --

21       **MS. AMALFE:**  (Unintelligible).

22       **THE COURT:**  So, Mr. Russo, do you -- Mr. Russo, do you

23  agree with that approach?

24       **MR. RUSSO:**  I agree with the approach, Your Honor.

25       I should just tell everyone:  I have a pro bono

1   assignment, so I'm on my way to catch a flight, and I've called

2   in to try to be as much part of this without changing the time

3   frame.

4        Mr. Lux actually --

5            **THE COURT:**  Okay.

6            **MR. RUSSO:**  -- has all the documents in front of him,

7   I don't, but I'm happy to answer.

8        But, yes, I'm fine with that --

9            **THE COURT:**  Okay.  Good.

10           **MR. RUSSO:**  -- (unintelligible) the argument that

11  (unintelligible) --

12           **THE COURT:**  That's totally fine with me.  So you --

13  you get on the phone when you need to.  That's fine.  All

14  right.  And we'll pursue with Mr. Lux.

15       Okay.  With that, then I don't see any --

16           **MR. RUSSO:**  I'm fine -- I'm fine with answering any

17  questions you have for me as well.

18           **THE COURT:**  Okay.  Great.  So -- So from -- from EBS's

19  perspective, we're going to start there.  Why that's a problem?

20           **MS. AMALFE:**  Your Honor, we have already given them

21  most of those documents.  We had an agreement with Mr. Russo's

22  office that we would give them any documents before the start

23  date between Mr. Tolat and Mr. Mandelzis.

24           **THE COURT:**  Okay.  That's fine.  That's fine.  So you

25  don't need to explain more.  That was in your -- If you -- If

1  that was you're agreement, I understood that maybe there was

2  delay in getting it.  It doesn't matter.  I'll order it.

3  That'll be fine.

4      We'll see what that gives Mr. Tolat -- gives Integral as

5  far as incite as into what else you might want.  I always feel

6  better with promises on discovery with some discovery because

7  then you can see what more you really need.  So that's fine.

8      We don't have a lot of time.  I have literally 22 matters

9  on calendar today and so we're just going to tick through these

10  things to start the process, not end it, and make things as

11  easy for EBS as possible consistent with eliminating some of

12  the things that Mr. -- that Integral and Mr. Russo have asked

13  for.

14      Okay.  Second category.  Communications to third parties

15  regarding Integral key employees.

16      So, from EBS's perspective, they agree to search for

17  communications by Mr. Tolat referencing, you know, persons or

18  objects, the identified terms.

19      My reaction -- And I can ask, you know, either Mr. Russo

20  or Mr. Lux, depending who's on the phone still.  It seemed to

21  be a good strategy to start there.

22      From EBS's perspective, that's what you proposed.  Have

23  you done it yet?

24          **MS. AMALFE:**  No, we have not done it --

25          **THE COURT:**  Not a problem.

1    **MS. AMALFE:**  -- yet.

2    **THE COURT:**  Not on problem.  I just wanted to know

3  whether you did it.  That's fine.  I mean, I understand the

4  procedural context of why you did.

5    From -- From Integral's perspective, Mr. Lux or Mr. Russo,

6  whoever's on the phone, my suggestion is:  Let's start there.

7  Let's see what it is.  It gives you far more information to be

8  able to, you know, in a targeted way, say, hey, this is what it

9  illuminates.  He's your guy that you allege to have taken the

10  trade secrets in the first place.

11    My suggestion is starting there, see what illumination it

12  has, and then expanding it if we think it's appropriate.

13    **MR. RUSSO:**  That's fine, Your Honor.

14    **THE COURT:**  Okay.  Great.

15    Category 3.  Communications from the BlackBerry contacts.

16    From -- EBS says they don't have it.  My recollection -- I

17  mean, I glanced at all my orders.  I read all of your exhibits

18  too, by the way, totally not necessary for the -- for the

19  disputes here but that's okay.  That's descriptive, not

20  critical.

21    But I thought the card was returned.  They said they don't

22  have it.  If there were private information that -- that -- You

23  know, one of the things is that I -- There's private

24  information that Mr. Tolat had on the BlackBerry that went to

25  EBS, his new employer.  Sure.  Not the customers' names.  Not

1  the identifying information but private information, sure.

2      But they say the BlackBerry contents were never downloaded

3  to the server.  And if they don't have it and the card was

4  supposedly retrieved pursuant to my prior orders, what's the

5  issue here from -- from -- from Integral's perspective?

6          **MR. LUX:**  Your Honor, this is Rob Lux.

7      The issue -- The issue is that I think -- And we didn't

8  mean to give you too much information.

9      But the critical thing here is that the evidence shows

10  that, after the TRO hearing, Mr. -- Dr. Tolat, the same day he

11  started at EBS and really was EBS's employee, went back and

12  erased a bunch of information off his BlackBerry card.

13      To us, that creates a very, very strong suspicion that

14  he's conveyed that information over to EBS.  I mean, if he has

15  it, he has the whole thing, it makes no sense at all.

16          **THE COURT:**  Right.  So -- So -- But he -- But he --

17  So, here, EBS tells me, hey, we looked -- I think people

18  looked -- I mean, they didn't say this specifically.  But they

19  said the card was not downloaded to the server.  They don't

20  have it; right?  Right.  That's what you're telling me from

21  EBS's perspective:  We don't have it; is that correct?

22          **MS. AMALFE:**  That is correct, Your Honor.

23          **THE COURT:**  Okay.  They don't have it.  Then -- Then

24  what I -- I'm not sure.  They verified that, candor to the

25  tribunal council.  What council makes -- Whatever council make

1  their representation about the status of things.

2      If your discovery ends up revealing anything different at

3  some time -- You know, I -- I appreciate what you're looking

4  for and why.  But if they say they don't have it, they don't

5  have it.

6          **MR. LUX:**  Right.  Okay.  Well, I think that, you know,

7  what would be helpful is, for sure, if they would agree to

8  provide the documents between EBS and (unintelligible) and

9  third parties relating to all these employees, so --

10         **THE COURT:**  But it's -- But it's -- So -- So all --

11  That's category B --

12         **MR. LUX:**  Yes, exactly.

13         **THE COURT:**  -- which is -- So -- But we're going to

14  started with, though -- We're going to start with

15  communications by Tolat first, which is in this time period,

16  just as a staging mechanism.

17     Communications -- Communications often boil down to

18  e-mail, and maybe there's going to be something more, but you

19  know that's normally where it's going to be.  It's just -- It

20  just -- It's potentially the universe.

21     Let's -- Let's stage it.  Let's see what the Tolat

22  production provides as illumination and then you look at it,

23  and based on what you see, you and the lawyers can talk about

24  it to see what else might be there, and then we can be

25  strategic about broadening it if that's what the evidence

1  shows; okay?

2      So let's start there.  And it's not to say we won't do

3  more, because I appreciate the impetus, but staging things like

4  this makes enormous sense for a bunch of reasons, including

5  costs, utility.

6      I mean, at the even end, you'll be identifying people with

7  communications.  E-mails show you other people on -- You know,

8  Dr. Tolat's e-mails might show other People.  Certain time

9  periods become relevant.

10     You are looking for -- I mean, you know, well, maybe they

11 didn't want to scrub everything, so it's -- there's no stone

12 left unturned.

13     But, really, what you're looking for, at least initially,

14 is some illumination to give you on Integral's side full

15 understanding of what happened, and that illumination can be

16 provided by person and date restrictions a little bit later

17 after you take a cut at the first round of e-mails.

18     So let's start there and, you know, see how that goes

19 and -- and we'll revisit if we need to.

20         **MR. LUX:**  Absolutely.  I respect where the Court's

21 going.

22     The only concern that I have is, given the fact that we've

23 proved and have made as an offer of proof a request for

24 communications between EBS and third parties, the only thing

25 I'm afraid of, Your Honor, is that because the evidence is so

1    strong, and the suspicion is so grounded in the facts that we

2    presented to the Court, I -- I -- I mean, I have to let the

3    Court know that I am concerned that the issue, even if we get

4    the communications between Dr. Tolat and third parties, is,

5    there's so much evidence that he did convey this information to

6    EBS.  And EBS particularly assigned the task of contacting all

7    these people, the HR people, to other sales people --

8        **THE COURT:**  But it could seem that -- How EBS may or

9    may not have done it is going to be illuminated by the

10   communications that Dr. Tolat had in this category.  And you

11   may be able to -- You may be able to see.  And, if not, we'll

12   figure out a strategy for you to see more.

13       **MR. LUX:**  Okay.  Thank you.

14       I thought I should let the Court know that was my concern.

15       **THE COURT:**  No, I understand.

16       **MR. LUX:**  And that we're still at the same place.

17       **THE COURT:**  Yes.  Although see what you get -- I don't

18   know what the volume is going to be -- and let's talk about it.

19       This is more of an ongoing discovery request, so I don't

20   have my little chart with your deadlines in front of me, but

21   this isn't a situation where, somehow, it's sort of -- Think of

22   it as a rolling production.

23       Okay.  Thank you.

24       **MS. AMALFE:**  Thank you, Your Honor.

25       **THE COURT:**  You're welcome.  Bye.

1          **MS. SKAFF:**  Thank you, Your Honor.

2                      (Court adjourned at 9:50 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF TRANSCRIBER**


I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U. S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____

Candace Yount, Transcriber

Monday, April 14, 2014