UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Laurel Beeler, Magistrate Judge

```
INTEGRAL DEVELOPMENT CORP., a  )
Delaware corporation,          )
                               )
          Plaintiff,           )
                               )
  VS.                          )      No. C 12-6575 JSW (LB)
                               )
VIRAL TOLAT, an individual,    )
and DOES 1-30,                 )
                               )
          Defendants.          )
_____)      Pages 1 - 26
```

San Francisco, California
Thursday, September 26, 2013

### TRANSCRIPT OF PROCEEDINGS OF THE
### OFFICIAL ELECTRONIC SOUND RECORDING

**APPEARANCES**:

For Plaintiff:

ComputerLaw Group LLP
401 Florence Street
Palo Alto, California  94301
BY: **JACK RUSSO, Attorney at Law**
    **ROBERT LUX, Attorney at Law**

For Defendants:

Farella, Braun & Martel LLP
Russ Building
235 Montgomery Street
Suite 3000
San Francisco, California  94104
BY: **KELLY ANN WOODRUFF, Attorney at Law**

Transcribed By:        Candace Yount, CSR# 2737, RMR, CCRR
                       Contracted Court Reporter/Transcriber
                       candace.yount@gmail.com

Computerized Transcription By Eclipse

1  <u>Thursday - September 26, 2013</u>                    12:15 p.m.

2                    **P R O C E E D I N G S**

3                        ---oOo---

4      **THE CLERK:**  Calling civil action C 12-6575, Integral

5  Development Corp. vs. Tolat.

6      **MR. RUSSO:**  Jack Russo and Rob Lux, Your Honor, for

7  plaintiff Integral.

8      **THE COURT:**  All right.  Good morning.

9      **MS. WOODRUFF:**  Good morning, Your Honor.  Kelly

10  Woodruff and Morgan Jackson for defendant Viral Tolat.

11      **THE COURT:**  Okay.  So, you know, having everybody here

12  in person in the Case Management Conferences, it would seem

13  such collateral good behavior.

14      So you're my -- you're last on my list.

15      All right.  So let's -- let's just talk practically about

16  this situation.  I -- I don't -- It doesn't mean I don't care

17  but I don't want to talk about whether you did or didn't meet

18  and confer.  I'm agnostic about doing what you're supposed to.

19  Everybody tried to talk.  It didn't work out as it should.  I

20  got separate letters.  I -- If you stick them together it more

21  or less adds up to one.

22      And so let's just kind of move on to the merits of what's

23  at issue here, which is your 30(b)(6) deposition.

24      And let me just pull out the -- And I -- And I did -- I

25  read -- Because I -- I do review the docket on a regular basis,

1   so I was able to catch that there was a supplemental filing

2   this morning, so I read it.

3        Somebody's declaration contained redacted materials.

4   Because chambers copies aren't delivered until, whatever, I did

5   not check the mail this morning, there's some redactions that I

6   did not read the unredacted copies because I didn't have them

7   because I just got them online last night, which is why I

8   issued my little scheduling text entry last night to put you on

9   calendar this morning to see if we can't problem-solve this

10  now.

11       Look -- And let me tell you my reaction and then maybe I

12  want to ask you some questions to talk about the access issue.

13       I understand Dr. -- So Dr. Tolat now has new lawyers.  And

14  I know that you've read -- I know that you've read the

15  electronic docket.  I know that you have gone -- you did --

16  What you're supposed to do is try to work out a schedule with

17  Judge White that allowed for you to get a very modest five

18  weeks -- I think that's what I read -- to get up to speed.

19       There have been a lot of motions filed, which I usually

20  try to keep up with what's happening in a case, just so, like,

21  I can get more substantive context for your discovery issues,

22  but I haven't read all the motions in their currently-filed

23  state.

24       And then I'm -- I did -- You know, I tried to read

25  everything that you sent me just to sort of -- I did read

1  everything to kind of get the procedural context of how your

2  deadlines impact your issues as they relate to discovery.

3      And Dr. Tolat tells me he has to depose the -- And -- And

4  I think I might have said this in the context of other

5  discovery cases today, that in my own case management in my own

6  cases earlier this morning -- And if you heard it when you were

7  still on the phone, you heard me say that some of the problem

8  with -- I don't know your case as well as -- as -- as you do

9  from a discovery standpoint or from what -- from a documents

10  standpoint.  I can't.  I mean, the way we learn about things is

11  when you file motions and you attach the declarations.

12      So I -- I can imagine, knowing what's at issue in the

13  litigation -- You know, a couple things strike me.

14      One, some of the issues about trade secrets are often

15  learned later in the discovery game and you don't really have

16  any deadlines set in your case except for the motions deadlines

17  that you sent.

18      But, normally, the way I think things work, you know,

19  regardless of what the applicability of -- of . . .

20      Let me just make sure I have my right memo here.

21      Regardless of the applicability of the California Civil

22  Code 29220 -- 210, usually what you do is, you get some

23  discovery and sometimes the trade secrets are, you know,

24  subject to contention interrogatories later in the game, which

25  makes some sense because it's in aid of settlement, and -- and

1  the parties' positions have to be -- and part of the reason --

2  And, again, I'm just giving you sort of context.

3      Part of the reason why the independent expert was so

4  important to evaluate what happened from a forensic perspective

5  with Dr. Tolat's media company is that he was -- And, again, I

6  just got this from the wash in your papers when I -- as I read

7  them along the way.

8      He was a really long-term employee.  There wasn't a lot

9  of -- I could see the e-mails.  I read along the way in some of

10  the discovery disputes about leading up to when he was leaving.

11      There obviously was -- There seemed to be enormous

12  feelings of betrayal, and that seemed to me there were enormous

13  efforts that were made in the settlement context with Judge

14  Corley.  I can see that you met over and over and over and over

15  again.

16      And it also struck me that -- And I don't know if this is

17  really true.  But until Integral had a really good look from a

18  forensic perspective what actually happened, that it wasn't

19  going to be able to put aside those feelings of betrayal.

20      And by betrayal, I don't mean necessarily taking trade

21  secrets.  I mean the betrayal of somebody who's been involved

22  with the company since the early '90s, or whatever it was,

23  leaving for a competitor.  So all those issues are at play.

24  And that's a part of the method for staging -- We tried to

25  stage.

 1      And so now -- And then, of course, you now have the

 2  summary judgment schedule that's ambitious, and Tolat says

 3  something along the -- said something along the lines of, you

 4  know, you did it at work so you file -- filed for summary

 5  judgment.  So you need to have us at your PMK because we're not

 6  going to be able to depose you.

 7      And I kind of take that they saw you because I don't know

 8  any different.  I'm only guessing at the lay of the land that I

 9  tried to help you all illuminate.

10      And then, very practically, I hear Mr. Russo telling me

11  that he needs information from AccessData and -- and you all

12  just gave me all this stuff yesterday, so I read it at a very

13  high level.

14      But he attaches a chart that basically proposes a

15  timeline.  And -- And -- And, you know -- So, again, on a high

16  level, tell me what you're missing, because you're lawyers.

17  You know your case better than I could after reading your stuff

18  last night, you know, pretty late at night.

19      He says, I can't do my job, either, prepping my PMK for

20  tomorrow unless I have this completed.

21      And that puts me at a bad spot to help you problem-solve

22  because you all know better what's going on than I do, and

23  we'll talk about it a little right now.

24      And then I add a third thing into the mix, is, you have

25  this very ambitious deadline that's driving you.  And I looked

1  at all those deadlines here just because it's hard for me to

2  read the order the way it's written.  I like charts.

3       And -- And Judge White usually -- I mean, what's going to

4  matter is, if you all get to District Court with motions -- and

5  Mr. Russo proposed something like a 14-page supplemental

6  something something later, which judges tend to hate -- Judge

7  White is going to be most amenable -- I mean, again, I can't

8  speak to him, but different judges have -- and you know better

9  than I do, because you've been handling your litigation in

10 front of him.  But I certainly appeared before him for a lot of

11 years and -- and it does seem to me that he's going to care

12 about the orderly presentation of case-dispositive motions,

13 whether or not they are dispositive.

14      So there's a whole elimination and it's starting to go

15 untidy to me.  And -- And it occurred to me that maybe I can

16 help you manage your deadlines so that everybody's interests

17 are satisfied within a relatively short period of time, and

18 Judge White's are satisfied, too, so he gets solid motions work

19 to be -- so you can finally move your litigation along, because

20 you don't have any dates except for these motions dates that

21 you set.

22      So, those are my reactions, and sorry for the long

23 narrative but I just wanted to kind of pull together the

24 context of the case with the last-minute filings to give you my

25 reaction, to ask you -- And so I heard what your arguments are,

1   and I don't want to hear about meeting and conferring.

2        And I told you already that I can't understand why it is

3   that -- that both of you are telling me things, you know,

4   Dr. Tolat, they can't believe -- they can -- they can do it, we

5   need this.  Okay.  I accept that.

6        Mr. Russo telling me, I can't prep a 30(b)(6) witness by

7   tomorrow.  I need this AccessData, which is in a couple weeks I

8   think he proposed.

9        So -- So what are people's reactions to what I said?

10            **MR. RUSSO:**  Your Honor, Jack Russo here.

11            **MS. WOODRUFF:**  Your Honor --

12            **MR. RUSSO:**  As things --

13            **MS. WOODRUFF:**  Your Honor --

14            **MR. RUSSO:**  -- come up --

15            **MS. WOODRUFF:**  -- I would like to address the motion.

16   Sorry.

17       Your Honor, this is Kelly Woodruff for Dr. Tolat.

18       I know you don't want to hear about the meet and confer --

19            **THE COURT:**  I don't want to hear about the meet and

20   confer because you all violated my procedures.  So if wept to

21   talk about that, then we want to talk about people filing

22   things at night and two days before something, I would respond

23   that I -- I'm dealing with this, so why would I care?

24            **MS. WOODRUFF:**  Yeah, I -- I -- I understand that.  I'm

25   sorry.  I don't want to address that.

 1     But I guess the -- the point is that, even in the papers

 2   that Integral filed, they still have not identified any

 3   information that AccessData has yet to provide that they need

 4   to present the 30(b)(6).

 5         **THE COURT:**  But they said -- But -- But -- But -- But

 6   that's because you filed something yesterday.  Mr. Russo -- I

 7   know this, because I've had discovery hearings where he joined

 8   me essentially on the tarmac before having Mr. Lux -- is that

 9   his name? -- you know, step in for him.  And so . . .

10     I mean, this is -- this is -- You've got a PMK tomorrow.

11         **MS. WOODRUFF:**  Okay.

12         **THE COURT:**  And so -- So I'm -- I'm happy.

13     So he -- So -- So -- But -- But he proposes a deadline of

14   October 9th.

15     And is that -- So let me just ask Mr. Russo this, because,

16   again, this is a fast process that you've given me.

17     Can you get the data from Access?  I mean, have you had

18   conversations with Access about what more you need and --

19   and -- and how they told you that they will produce it by the

20   9th?

21         **MR. RUSSO:**  Your Honor, it's -- it's a joint request

22   from both counsel that goes to AccessData, and not blocked by

23   anyone.

24     AccessData will perform services, and they typically do so

25   fairly quickly, so that within a week or so of when a request

1  is made.

2     We -- We actually sent a very specific set of requests

3  which we wanted counsel to approve.  Mr. Lux sent it over

4  months ago because Your Honor ordered that we were to get this

5  information.

6     Your Honor said Mr. Tolat is to return all confidential

7  information to Integral, including any source code he took.

8  He -- He may not possess it on any media.  That's Page 3 of

9  your order.

10     **THE COURT:**  No, no, no.  You know, actually --

11  Actually -- I actually wrote the order so I do remember it.  I

12  don't mean that to be unkind but I do all my own discovery.

13  You can tell by the freewheeling style in which the orders are

14  written.

15     So, I -- The reason that I did that, from Integral's

16  perspective and from Dr. Tolat's perspective, with Dr. Tolat's

17  agreement with Eckhaus, the prior lawyer, is -- is, there were

18  certain representations that were made.

19     And this is a process that was just meant to protect all

20  of Dr. Tolat's personal information, not a problem, and provide

21  a mechanism for return, and he's got -- So -- So the new

22  employer, whom I always want to -- had already said that his

23  BlackBerry contact information, for example, was not uploaded

24  on the server.

25     And -- And -- And we had discrete areas for forensic

1  examination.  It's not that complicated to just sort out -- And

2  I don't care, for example, if you -- The process is to return

3  information to Integral and that was done without objection by

4  Dr. Tolat.

5      I can also imagine a -- a wiretap-like scenario where a --

6  a pristine copy is maintained in case it becomes appropriate

7  for further discovery.

8      But this was meant to -- I mean, this -- this --

9  this . . .

10     I have no idea, but when I look at the pleadings, and I

11 look at what Dr. Tolat says about his financial situation, and

12 I look at what Integral suspects he took, it struck me that, if

13 you just finish the forensics -- This is -- These forensics are

14 so easy.  They're not very expensive.

15     And usually you need all that stuff done before mediation

16 can be effective, and -- and that's what we're trying to do

17 here.

18     And it does -- And I don't know at all how the summary

19 judgment motions -- I mean, if you -- I don't know how you

20 can -- And maybe you've all agreed with new lawyers in the case

21 about what discovery needs to be done so summary judgment

22 motions can be productive.  But normally this stuff happens --

23 The forensic -- Actually, the forensic stuff probably, which

24 is -- I'm just thinking out loud to myself -- is all the

25 discovery needed to be done.  And so I understood that was the

1  scope of the prior order.

2      And from Farella's -- From Dr. Tolat's perspective, I

3  mean, why is that a problem to agree that my prior order should

4  be -- I mean, Mr. Russo's telling me that the old lawyer pulled

5  the plug on it at some point -- but I -- I jotted it down, but

6  I must have jotted it down on a different page -- pulled the

7  plug on it at some point.

8      Why can't this be accomplished?  That's only a couple

9  weeks from now.  Why -- Why the -- And you have a tidy 30(b)(6)

10 deposition of someone who can really talk with you about the

11 trade secrets.  Why isn't -- Why shouldn't you just sit down,

12 hammer out a -- a schedule that works for everybody, given that

13 we're just talking about a couple weeks, and have me facilitate

14 adjusting your case management deadlines?

15          **MS. WOODRUFF:**  Your Honor --

16          **MR. RUSSO:**  Judge --

17          **MS. WOODRUFF:**  -- we did offer that.  We offered -- We

18 physically requested that -- that if Integral could not produce

19 a 30(b)(6) deponent tomorrow, that we'd push everything back.

20      **THE COURT:**  Okay.  So let's just do that.  Let's just

21 do that.

22     Right, Mr. Russo?

23          **MR. RUSSO:**  The problem, Your Honor, is, they don't

24 seem to want to honor your order.  We have asked them --

25          **THE COURT:**  So -- So -- So, we -- But we have --

1   The -- It's not negotiable about the -- And here's the thing.

2        I'm happy -- So -- So . . .

3                    (Pause in proceedings.)

4        **THE COURT:**  These are high-level assertions in the

5   letter.

6        You need -- The reason the new lawyers -- I know you said

7   it months ago, but the reason the folks at Farella -- Exactly

8   what the plan is for Access -- getting the stuff from

9   AccessData, I previously -- You -- From Farella's perspective,

10  from Dr. Tolat's perspective, my previous order, I've explained

11  what it was designed to do.  It was designed to separate out

12  the personal from the private that Dr. Tolat wasn't entitled to

13  take.

14       If there's an argument about whether he was or wasn't, at

15  least the forensic analysis is completely separate from the

16  arguments about what the data shows.

17       My view is, is that I -- I -- I appreciate a lot of what

18  Mr. Russo has said along the way about not giving people like

19  Dr. Tolat a kind of a free shake at the trade secrets.

20       That being said, any issues that you all have can be

21  completely addressed, which I can't imagine there won't be any

22  issues.  They can be addressed at least preliminarily by an

23  attorneys'-eyes-only order.

24       And that is enough in this case, Mr. Russo, given that you

25  have fine lawyers on the other side, and -- and we just need to

get moving along with that because there's no way in this

case -- It's too -- I mean, my observation, looking at the --

the course of the litigation so far, is, nobody's business

interests are very well-served by this continuing on.  And if

you don't do this forensic excavation, then this case can't

stop, and everybody's interest is for it to stop.

So I think you should meet and confer.  And I want to have

a proposal to be in chart form with your dates.

If you disagree, I want, you know, Column 1 plaintiff,

Column 2 Defendant, Column 3 blank, and e-mail it to me in a

word processible form.  I want everything to be in that,

including the proposal for Access.

I want Mr. Russo to send his proposal to Farella --

because maybe they have it but they're new in the case --

immediately today.  And I want you to talk about it by phone,

not by e-mail.  Arrange a conference call to talk about that

part of it.

The discovery chart says -- You already know that, from

Farella's standpoint, that Mr. Russo thinks you had that chart

with some of his deadlines.

What I would suggest is, you start over a word processible

chart where you put out, you know, current deadline, your

proposal, and then a blank for theirs.

In the meantime -- And then you'll e-mail it to Mr. Russo,

who will put in -- And maybe you'll e-mail it to him and then,

1 instead of having back and forth e-mails, you could get on the

2 phone and talk about it, talk about any issues, or he could put

3 in his proposals, and you have a phonecall after that to work

4 out your compromises.

5      Then if there are any issues from a discovery standpoint,

6 you let me know right away in a joint letter.  I'm usually

7 pretty good about reading things realtime.  If we have to talk

8 next Thursday, for example, I'll make time to talk with you

9 next Thursday, or along the way if I can do it faster.

10      But I don't think there should be any issues because my

11 prior orders are pretty clear.

12      Once you work out your deadlines, then I would suggest

13 that you let me know and then file a joint stip to continue

14 them and say that, with the assistance of Magistrate Judge

15 Beeler, I -- And I will separately, you know, sort of reach out

16 to Judge White to say it makes sense in the context of the

17 discovery that we planned.

18      You should say something like, in your stip -- this is the

19 proposal I have for you -- My -- My -- And, again, I can't

20 promise anything but if you do this realtime, which I think you

21 should be able to do it today -- today, later today or

22 tomorrow -- I think we could kind of manage everything for you

23 so you have points of reference.

24      But I would suggest you also put in your joint stip to him

25 along the lines of, you know, the parties agree that this will

1  ensure the orderly presentation of the motions that the parties

2  are currently contemplating.

3      I don't think you need to put an explanation there.  I

4  think you just need to say you had a Discovery Case Management

5  Conference with me.  With my input, you've done this process.

6      I mean, you don't have to do it that way.  This is just a

7  suggestion.

8      But I -- I think Judge White would be -- Without knowing

9  for sure, I -- he's been very -- he's very good just generally

10  about working along those lines.

11          MS. WOODRUFF:  Your Honor, our only problem with

12  that -- I think that's a terrific suggestion and I think

13  that -- that that will work.

14      I guess my primary concern with that is that the summary

15  judgment motions are due tomorrow.

16          THE COURT:  Well, so -- so you do the chart.  I mean,

17  can -- Do a chart right now.  That's the kind of thing you can

18  put up in your -- or update your CMC statements.  I love my

19  charts but you don't have to do a chart.

20      I can's -- My own CMC orders, I have charts because I hate

21  reading, like, through lies for scheduling orders.

22      Why don't you take the -- So, Mr. Russo, you send in your

23  Access proposal and, Farella, you all look at what's in

24  Mr. Russo's part of the joint letter.

25      Draft a joint CMC statement with the proposed dates and

1  then send it to Mr. Russo attempting to accommodate what he

2  said.

3      What I would say is, everybody's interests here are --

4  are -- are . . . served by getting the forensic stuff done,

5  having a little perk time.

6      I don't know how you all feel that -- Do you all feel that

7  your settlement negotiations just are at an irretrievably

8  broken impasse, or do you think that once -- I mean, I --

9  Emotions run high.  I don't know, because I didn't look,

10  although I could have looked at the Minute Orders, who was

11  there at the Settlement Conference.

12      But do you think that if you can finish the work you need

13  to do, including maybe a 30(b)(6) deposition of Integral's

14  person on trade secrets, I mean, do you think that -- that you

15  should factor a little space for -- to try to take another

16  crack at settlement?

17      That's the other thing that I -- And I -- I -- I'm mindful

18  of the fact that you all have gone through this.  But with the

19  personal emotions that are at stake in the litigation, which

20  have nothing to do with the lawyers, I know you all have your

21  clients' best interests at heart, and it just seems to me that

22  the whole way we work in the Bay Area, being such a center for

23  innovation and tech, that this trade secret litigation in the

24  long run like this isn't good for -- isn't good for anybody's

25  business.

1    **MR. RUSSO:** Your Honor, we have been asking, as you

2 know, for the turnover of all the AccessData information left.

3 What AccessData sent me out is the personal information of

4 Mr Tolat for a month, which --

5    **THE COURT:** So, now, however process you get -- And my

6 question was really only, when you figure out your schedule, I

7 think you should all take a big collective deep breath, think

8 about your clients' best interests and, when you're doing your

9 schedule, don't be optimistic that you don't give yourself perk

10 time to consider whatever the AccessData shows as a way of

11 figuring out whether there's a resolution of the case that the

12 parties can reach before you get a top-down one from your

13 decision-maker.

14    **MR. RUSSO:** Your Honor, we're fine making in whatever

15 additional time.

16    This -- The original motion that has been filed here has

17 reset, I think, maybe three or four different times.

18    **THE COURT:** Right. But, of course, now Mr. Tolat has

19 new lawyers and -- you know. And I hear you. But you need --

20 You say -- If they say to respond, they need the PMK, I'm going

21 along with that. I think that's right.

22    You say, in order to prep and to serve how the orderly

23 course of information, you need the AccessData. And I also

24 you're going to need it, because your client isn't going to be

25 able to do anything except for battle until you have that point

 1  of reference.  That's what the litigation has shown me.

 2      So all I'm doing is encouraging you.  And then I'll help

 3  with you Judge White to the extent that you need it, because he

 4  cares about the orderly management of his litigation, too, and

 5  my job is to make his job as easy as possible so he has

 6  well-briefed motions if it does have to be a top-down decision.

 7      But I just wanted to encourage you to think about what

 8  space you really need.  Given that you don't have a trial date,

 9  this isn't -- You know, some other judges, as you know, have

10  very strict approaches to -- to -- to -- to deadlines because

11  they're managing towards a trial date.

12      That can be a really great strategy for getting everyone

13  focused, and this can also be a -- This strategy here can be an

14  opportunity for you to figure -- to manage your own litigation.

15      But I would encourage you to set deadlines that work for

16  you to allow you to really do, on both sides, your jobs really

17  well for your clients.  That's all I'm saying.  And I will see

18  what I can do from a case management standpoint with Judge

19  White.

20      So why don't you talk to get me something today.

21      What -- So, how -- When do you all think you could get it

22  to me?

23          MR. RUSSO:  Well, Your Honor, we actually sent a

24  stipulation over about two weeks ago that laid out a schedule

25  that we thought made lots of sense.  What came back was

1   essentially, no, we're not doing that.

2          **THE COURT:**  Okay.  But now -- But now -- But now --

3   Now we're okay with it because Farella said they think it's

4   basically a good idea.

5          And, you know, there's no need for rushing here.  We've

6   got -- But firm deadlines that make sense are a good idea.

7          And so since -- since you sent that over, I hope you sent

8   it over in word processable format.  Follow up with your Access

9   stuff.  Talk about it this afternoon.

10          I will -- I have a -- I've got to sort of sign off now.

11          I'll do a quick little order at some point this afternoon

12   just saying, you know, so there's a record saying I encouraged

13   you to submit the stipulation.  And I'll -- And then Judge

14   White will have an opportunity to -- to know that that's

15   coming.

16          So when you submit your stipulation, hopefully later

17   today, I can keep everybody in a loop and I'll alert the staff

18   and everything that this is the process that we're

19   contemplating.

20          **MS. WOODRUFF:**  Thank you.  This is Kelly Woodruff.

21          I, again, am all for this plan.  What I'm hearing from

22   Mr. Russo, the stipulation that they sent over before, the only

23   reason it was unacceptable from our point of view was because

24   it did not extend the summary judgment date.

25          **THE COURT:**  Okay.  So -- So -- Seriously, you've got

1 to set the summary judgment dates after Access.

2     I mean, you guys, maybe just get on the phone right after

3 this.  Each have a copy in front of you.  Just hammer it out.

4     Mr. Russo, you say you need all the Access things.  Get on

5 the phone.  Talk out what the dates are.

6     My strong recommendation -- I mean -- And I would decide

7 this if I were the one able to decide your hearing dates.

8     My strong recommendation is, you have to fix all your

9 other dates to give you, Mr. Russo, the time you need to get

10 the information you want and then to give Farella its 30(b)(6)

11 deposition.  This has got to happen.

12     And -- Because at its -- It's really important for

13 settlement, too.  And people haven't sort of dealt with what's

14 at issue with the litigation, and these are your mechanisms to

15 do it.

16     You can't talk meaningfully about whether there's an exit

17 strategy from the clients, who are probably both pretty heated

18 about the litigation.

19     Okay?  So does that make sense, Mr. Russo?

20         **MR. RUSSO:**  It makes sense, Your Honor.

21     I do think that there's a distortion in the record, but I

22 won't waste your time with it.

23         **THE COURT:**  Well, it's -- it's a -- it's an

24 opportunity for a do-over.  So we all talk -- So why don't

25 you -- This'll be -- Since you're on the phone now, you guys

 1  should just call by telephone -- I'm sure Farella has a

 2  standard calling number that they can send to you in five

 3  minutes -- is that right -- or call in on one line?  Whatever.

 4          **MR. RUSSO:**  Your Honor, when we sent -- Your Honor,

 5  when we sent the stipulation, we said, send us back a redline

 6  version of --

 7          **THE COURT:**  We don't want red lines.  You don't have

 8  time for redline.  You need to get on the phone and talk about

 9  it with your calendars open and in front of you.

10      Or, alternatively -- I mean, I would help you do it if I

11  had your stipulation.  But have your calendars open on your

12  computer.

13      Farella has a stipulation.  I have no problem with them,

14  you know, interlineating the dates that they want so they have

15  a quick -- Especially if you sent in a word processible phone.

16      But I'm ordering a call within the next 15 minutes.

17      Does that seemed doable from your -- from -- from

18  Dr. Tolat's perspective?

19          **MS. WOODRUFF:**  Yes, Your Honor.

20          **THE COURT:**  Okay.  Good.

21      So call -- I'm ordering a call in 15 minutes.

22      Work out the dates.  Send them back.

23      If you need me again today -- which I really hope you

24  don't -- I have a 1:15, a 2:15.  I teach at 3:30, but I'm

25  teaching here.

 1      Probably -- Call chambers at 522-4660 to -- to -- if you

 2  need to schedule a case management call -- if it's case

 3  management call, it wouldn't be on the record -- to help if you

 4  need me, but I don't think you will.

 5      I'm going to make sure that I talk with to Judge White's

 6  chambers just about a procedural context of this.  I'm going to

 7  shoot -- I'll try to send him a message now just to alert to

 8  the issue.  And you guys sort out your dates.

 9      I'm on call at noon.  If you can't sort them out -- You

10  have to be able to sort them out, because you need to file with

11  Judge White -- I can't imagine you can't sort it out.  You need

12  to just agree -- Because I'm going to go -- If either of you

13  tells me -- and this will be a helpful form of reference for

14  you.

15      Whatever each of you tells me you need -- Farella says it

16  needs the 30(b)(6), I agree.  Mr. Russo says he needs this

17  information from Access, absent something, my order was

18  designed to get him that.  I agree.

19      If Farella says that it needs the 30(b)(6) deposition, as

20  I said, to depose, fine.

21      Mr. Russo says that he needs the Access information to

22  prepare.  Fine.

23      So because I can't tell, because I don't -- I mean, I have

24  a good sense of your litigation, because I understand it,

25  because I've read everything, except recently for all the

motions.  I understand your litigation, but I'm not going to be

able to second-guess what you tell me, because I'm going to

accept what you tell me because I know that you're telling me

your needs to do good jobs for your client, and I'm going to

accept that.

And that will help you know that there won't be

disagreements on the timelines you need, because I'm going to

accept counsel's representations about what they need to do a

good job.

So have the call in 15 minutes.  It may be that -- And --

And immediately after the call, Mr. Russo will send the Access

e-mail again.

Immediately after the call, we'll have . . .

Miss Woodruff will send a call-in number if that's how

you're going to do it, or just direct Mr. Russo to call a

specific number.

You'll -- You can -- What -- What's your -- Just -- Maybe

we'll just do that right now.

Does Farella have a call-in number that Mr. Russo should

use or should he just call you directly?

**MS. WOODRUFF:**  It would be great if he could call me

directly at 415-954-4403.

**THE COURT:**  Okay.  Perfect.

And you'll do that 1 o'clock, Mr. Russo.

And -- And then if, for some reason, you know, sometimes

 1 people run out, sometimes it goes to voice mails because of

 2 calls, you all are on the hook for having the call, even if

 3 that means redial, redial, redial until you're connected so you

 4 can talk in person.

 5     I think it's much more effective than the (unintelligible)

 6 with the back and forth given your time constraints.  That way,

 7 hopefully, you can file sometime by around 2:00 and everybody

 8 should be okay for deadlines.

 9         MR. RUSSO:  Your Honor, just so that your notes have

10 Exhibit 4 was a stipulation sent two weeks ago --

11         THE COURT:  Right.

12         MR. RUSSO:  -- tracking the ruling that you made

13 today.

14         THE COURT:  Okay.

15         MR. RUSSO:  All right.  So you have that.

16         THE COURT:  Okay.

17         MR. RUSSO:  Thank you.

18         THE COURT:  All right.  Farella's point is, it didn't

19 adjust the summary judgment deadlines.  I don't have a cache of

20 whether it does or doesn't, but I appreciate, Mr. Russo, that

21 you sent the stipulation.

22     I appreciate Ms. Woodruff that you need the -- all the

23 date -- hearing dates continued, and that's what you should do.

24     And I am -- I am -- I feel optimistic that Judge White

25 will do that for me, and you'll have an answer today.

1          **MS. WOODRUFF:**  Thank you, Your Honor.

2          **THE COURT:**  All right.  Thank you.  Bye.

3          **MR. RUSSO:**  Thank you, Your Honor.

4                  (Court adjourned at 12:48 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U. S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____
Candace Yount, Transcriber

Monday, April 14, 2014